# JANUARY TERM, 1894.*

Alonzo Sanborn v. The Detroit, Bay City & Alpena Railroad Company.

[See 91 Mich. 538.]

*Negligence—Accident at railroad crossing—Evidence.*

1. Where a witness has testified, in an action for injuries received at a railroad crossing, that the statutory signals were not given, the further question whether, immediately after the accident, the matter of such signals was talked over by the men who were present at the time, is properly rejected; but the after offer of counsel to show that such conversation was had is not prejudicial error.

2. The testimony of a witness who was at work near the place of the accident, that he did not hear the signals, is held to have been competent, in view of the attending circumstances, which are stated in the opinions of McGrath, C. J., and Hooker, J.[1]

Error to Alpena. (Simpson, J., presiding.) Argued November 1, 1893. Decided February 12, 1894.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinions, and in 91 Mich. 538.

*A. M. Henry (John Atkinson* and *James McNamara,* of counsel), for appellant.

*J. D. Turnbull* and *Frank Emerick,* for plaintiff.

---

*Continued from Vol. 98.

[1]See *Shufelt v. Railroad Co.,* 96 Mich. 329, and *McDuffie v. Railway Co.,* 98 Id. 356, for discussions regarding testimony of this character.

GRANT, J. The facts in this case will be found fully stated in 91 Mich. 538. No claim is made by the defendant's counsel that the record differs from the former one, while the only difference claimed by plaintiff's counsel appears in their brief in the following language:

"It appeared from the other record that one or two minutes elapsed from the time of looking and listening and going upon the track. *It will be seen by this record that it does not appear that any time, to speak of, elapsed from the time plaintiff went in front of horses, and looked and listened, and driving upon the track.*"

The majority opinion then filed is the settled law of the case, and cannot now be reopened. The majority opinion did not discuss the question of the contributory negligence of the plaintiff, while the minority opinion held that the plaintiff's own negligence was a bar to his recovery. It is unnecessary to discuss it now, as the majority of the Court are of the opinion that the question was one for the jury. It remains, therefore, to discuss and determine errors raised upon the new trial, and not then before the Court:

1. One Nitz, a witness for the plaintiff, testified that at the time of the accident he was working in the woods, about 25 rods from the railroad; that the land between him and Beck's crossing was covered with jack pines; that he was in a position to hear signals at the crossing; and that "defendant gave no signal by ringing the bell or tooting the whistle." Plaintiff's counsel then asked the following question:

"State to the jury if, some time immediately after this injury had taken place, whether this matter—whether the fact of whether they had given signals at this crossing—was talked over among the men that were there that day."

This was objected to as incompetent, and the objection sustained. Plaintiff's counsel then said: "What I offer to show is this—" Defendant's counsel interrupted, and objected to any statement of what he proposed to prove, as

incompetent. The court overruled the objection, and counsel then stated that he "offered to show that it was talked over among the men that afternoon, after Sanborn got hurt, and their attention called to it,—as to the facts whether this whistle was blown or bell sounded at Beck's crossing." The purport of the question was perfectly plain. No statement was necessary to enlighten the court as to its competency. Plaintiff should have rested upon the ruling. *Turner v. Machine & Foundry Co.*, 97 Mich. 166. When counsel makes such a statement, the plain inference is that he knows that he can sustain the offer by proof. Such offers, if not made for the purpose of influencing the jury, certainly have that tendency; and we cannot say, in this case, that they are error without prejudice. The testimony offered was wholly incompetent. The law does not permit a party to strengthen the testimony of his witness to a transaction by showing that he talked it over with others after the transaction took place.

2. One John Chapman, a witness for the plaintiff, was working about 25 rods further from Beck's crossing than the place of the accident. He testified that he had been working there about three weeks; that he knew the location of Beck's crossing, about three-quarters of a mile above; that the day was stormy,—snowing and blowing; and that he heard the trains whistle every day at Beck's crossing. He was then asked the following question: "State whether, at this time,—the train that hurt Sanborn,—whether it gave any signals, so that they could be heard by you at that crossing, or not." Objection was made that it was incompetent, but the court overruled the objection, and defendant excepted. The wind was blowing across the track from the north-west. The testimony does not disclose whether Chapman was in the path of the wind coming from the crossing. If he was working 25 rods further from the crossing, in a direct line, than was plaintiff, he

could not well have been in its path. He had not shown
that he had heard any signals at this crossing under the
same conditions that existed at the time of the accident.
His opinion, therefore, that the signals could have been
heard by him if given, is incompetent. But, had it
appeared that he had heard the signals before under simi-
lar circumstances, his opinion that he could have heard
them on that occasion would be incompetent. His testi-
mony, under such circumstances, that he heard no signals,
would, in my judgment, have no probative force to prove
that the statutory signals were not given. He did not
testify that he was listening or paying any attention what-
ever, or in what work he was engaged, or how much noise
it made, or whether there were any obstructions to prevent
the passage of sounds. Is it reasonable to hold that such
testimony is evidence of the material fact to be proved in
order to sustain a recovery? It seems to me a reasonable
and just rule that there is no presumption that a signal
was not given from the fact that one did not hear it,
without showing that his circumstances and surroundings
were such as to induce a reasonable inference that he
would have heard it if given, and that, when objection is
made, it is the duty of the party offering the testimony to
show such circumstances and surroundings. It is a matter
of common experience that persons do not always hear
customary sounds, when they are paying no attention. It
is the theory of plaintiff that, with nothing to interrupt
his hearing except the snow and the wind, and while listen-
ing intently, he could not hear the sound of the approach-
ing train almost immediately before it struck him. Yet
the jury are permitted to find from this testimony of
Chapman, who was at work three-quarters of a mile or
more distant, that he could have heard the signals if given,
and that the fact that he did not hear them is evidence
that they were not given. We think the question should

have been excluded. This ruling covers other testimony of a similar character.

In *Menard v. Railroad Co.*, 150 Mass. 387, the negligence alleged was the failure to ring the bell, and the testimony was of a similar character. The court said:

" Ordinarily, all that a witness can say, in such a case, when called to prove that a bell was not rung, is that he did not hear it. Such a statement, with no accompanying facts, is merely negative, and of no value as evidence. But attending circumstances may be shown, which make the statement strong affirmative evidence."

In a recent case in the same court, decided last June, the plaintiff relied on the testimony of two men working near the crossing, one of whom testified that he did not hear any bell, adding that he noticed nothing about the bell at the time; and the other, that he did not hear any bell. The court, in deciding the case, said:

"If their situation and occupation had been such that naturally they would have observed whether the bell was or was not rung, then the fact that one or both of them said they did not hear it rung would be evidence tending to show that it was not rung. But the testimony does not disclose such a state of things. On the contrary, both witnesses had their attention engrossed by the building of the fence, and neither was interested, for any reason, in the approach of the train. To say that one did not hear, when there was not only no reason why he should hear, but, from his occupation, reason why he should not hear, is very little, if at all, stronger than to say one does not remember to have heard." *Hubbard v. Railroad Co.*, 159 Mass. 320.

In the recent case of *Horn v. Railroad Co.*, 4 C. C. A. 346, 54 Fed. Rep. 301, this precise question was before the court; Circuit Judges Jackson and Taft and District Judge Swan sitting in the case. Several witnesses had testified positively that they heard the whistle sounded. Negative testimony was then introduced, of the same character as that in the present case. In rendering the opinion, the court say:

"In the very nature of things, their affirmative testimony that the warning was given must be accepted as proof of that fact, notwithstanding an equal or greater number of witnesses failed to notice it, from whatever cause. There is, in such cases, no conflict of evidence as to the matter in question. The observation of the fact by some is entirely consistent with the failure of others to observe it, or their forgetfulness of its occurrence."

For these errors the judgment should be reversed, and a new trial ordered.

LONG, J., concurred with GRANT, J.

McGRATH, C. J. I cannot agree with my Brother GRANT in the conclusions which he has reached.

Respecting the first question discussed, I fail to see that the offer to show was more prejudicial than the question itself. Counsel did not offer to show that the parties present had stated that the whistle was not given, but that immediately after the collision their attention had been called to the question. I am not clear that the testimony was not competent as tending to show that the witness did not rely upon his recollection, at the time of the trial or long subsequent to the event, of the fact that the whistle was not blown, but that his attention was immediately called to the question, and it was then and there determined by him, and fixed in his mind.

Respecting the testimony of the witness Chapman, it is apparent from this record that the witness, his brother, and Nitz were at work east of the place of the accident. The wind was blowing from the north-west, and the train was running south. Chapman had testified that he had heard the train whistle every day at Beck's crossing, and in answer to the question said that he heard nothing at all on the approach of the train in question,—only a little "toot" of the whistle (evidently the whistle given within a few rods of the collision),—and that he heard the train

stop. It would seem from this record that the circum-
stances were more favorable to his hearing the whistle, if
given, than if located at the point of the accident. These
witnesses were engaged in the same general lumbering
business with plaintiff. They knew of the fact that plaintiff
was hauling the logs which they were cutting across this
very track. These attending circumstances clearly make
the testimony competent, even under the cases cited.

MONTGOMERY, J., concurred with McGRATH, C. J.

HOOKER, J. I concur with my Brother McGRATH in
affirming this case.

I agree with my Brother GRANT that the court properly
sustained the objection to the testimony offered to show
that the men talked about the signals during the afternoon
following the accident. Such testimony was not a part of
the *res gestae,* and, if given, would have been in the
nature of hearsay. Even the fact that the question was
discussed would have tended to show that it had been ques-
tioned, and would have been liable to be taken as evidence to
support the opinions of the jurors, one way or the other
Its only possible bearing was to reinforce the testimony of
the witness, by showing that he or some one else said, soon
after the accident, that the bell had not rung, and that, there-
fore, his statement that it did not ring was more probable, or
his recollection of the transaction more liable to be accurate
But all this testimony was inadmissible. The court sustained
an objection to the question, and there is nothing to indicate
that the offer was made in bad faith. It was not made until
the court permitted it, which I think was within his dis-
cretion. He ruled the testimony out, and we should not
assume that the jury disregarded his ruling.

As to the testimony of Chapman in relation to not hear-
ing the signals, I think there were circumstances that made
the testimony admissible. The wind was from the north-

west.    He was working towards the south-east, where he had been in the daily habit of hearing the whistle, but failed to hear it that day.   The probability of his hearing it depended much on what the jury should think about his location and the force of the wind.   It may be that the wind was an impediment to his hearing, while it may have been an efficient aid in transmitting the sound to him.   If he was in the direction that the wind was blowing from the place of the accident, the harder the wind blew the more likely would he have been to hear it.   I think the fact that he generally heard the signal, in connection with these other circumstances, was properly submitted to the jury, that they might say whether his evidence was of more force than mere negative testimony.

I think the judgment should be affirmed.