MARGARET McCULLOUGH v. THE MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.

*Negligence—Accident at railroad crossing—Evidence—Contributory negligence—Question for jury.*

1. Where, in a personal injury case against a railroad company, based upon the failure to give the statutory signals before reaching the crossing near which the accident occurred, the plaintiff and her husband testify that it was a calm day, that they had brought their horse to a walk, and were listening for the signals, and heard none, and one of plaintiff's witnesses, who was a passenger on the train, testifies positively that the signals were not given, while the defendant's witnesses aver that such signals were given, the testimony is conflicting, and the question should be submitted to the jury.

2. While it has been held in many cases that, before venturing upon a railroad track at a point where the view of an approaching train is cut off, the traveler should stop and listen, the doctrine has never been applied to a case where the driver is at a distance from the track at the time of the accident, and the injury results from the horse taking fright at the train, and running away.

3. The testimony of bystanders that they did not hear the statutory signals which a railroad company claims to have given before making a crossing is negative evidence, and without weight, unless there is something in the surrounding circumstances tending to show a probability that the witnesses would have heard the signals if given.

4. Where in a suit against a railroad company for injuries sustained by being thrown from a cutter, which was overturned by reason of the horse running away, it having become frightened at an approaching train, the evidence clearly shows the cause of the fright of the horse, the admission of the testimony of the driver that the horse was frightened by the train, if inadmissible, works no injury to the defendant.

5. Where, in a personal injury case against a railroad company, one of the plaintiff's witnesses testifies positively that the statutory signals were not given before reaching the crossing near which the accident occurred, but does not testify that he was listening for the whistle, and, being a passenger, could not have been looking for the train, and none of plaintiff's remaining witnesses, though several of them were within hearing distance, are allowed to testify that they could and would have heard the signals if given, it is reversible error to instruct the jury that some of plaintiff's witnesses have testified that they were looking and listening for approaching trains, and that if the signals had been given they would have heard them.

6. Plaintiff was injured by being thrown from a cutter, in which she and her husband were riding, by reason of the horse taking fright at one of defendant's trains, and running away. The train was several hours late. The highway ran for about three-quarters of a mile nearly parallel with the railroad track, varying in distance therefrom from 35 to 200 feet, and finally crossed the track, near the place where the accident occurred, at an angle of about 45 degrees. All view of trains approaching the crossing from the opposite direction was cut off, until within 35 feet of the track, by a hill, around which the road passed on a sharp curve. Plaintiff's husband, who was driving, testified that he waited in a neighboring village for two hours to

make sure that the train had passed, and on his way home was informed that it had passed, which information he believed to be true; that he was approaching the crossing, and, just as he reached the line of the right of way, the train came into view, distant less than 300 feet from the crossing, and that his horse turned about and ran away, upsetting the cutter, and injuring the plaintiff. Plaintiff and her husband both testified that they were listening, the horse having been brought to a walk, and that they heard no signals. And it is held that it was for the jury to say whether or not the plaintiff's husband was negligent in driving within 35 feet of the track without stopping to listen for a train.

Error to Schoolcraft. (Steere, J.) Argued April 11, 1894. Decided June 26, 1894.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*E. C. Chapin* (*A. H. Bright,* of counsel), for appellant.

*Carey & White,* for plaintiff.

HOOKER, J. Defendant appeals from a judgment obtained at the circuit for an injury sustained near defendant's railway, at its crossing of a highway.

Plaintiff was riding in a cutter with her husband, upon a highway that was nearly parallel with defendant's track for about three-fourths of a mile, varying in distance from the track from 35 to 200 feet. This highway finally crossed the track, near the place of the accident, at an angle of about 45 degrees. To the east of this crossing was a sharp curve around a hill which lay to the eastward of the highway, rendering it impossible to see the train approaching from the east, from any point upon the highway, until the line of the right of way was crossed. Plaintiff was approaching this crossing, and just at the line of the right of way the train came into view something less than 300 feet distant from the crossing. The horse turned about, and ran away, upsetting the cutter,

and injuring the plaintiff.    The negligence relied on was a failure to give the statutory signals.

The counsel for defendant contend that the court should have directed a verdict against the plaintiff, for two reasons:

1. Because the testimony conclusively showed that the signals were given.
2. Because the plaintiff and her husband did not stop and listen before reaching the point where the accident occurred.

Were we to pass upon the question of fact, we should say that the giving of the signals was established by a preponderance of the evidence, but we cannot say that there was no evidence to the contrary.    Plaintiff and her husband both testify that they were listening,—the horse having been brought to a walk,—and that they heard none, and that it was a calm day.    William Howard, who was on the train, testified positively that they were not given. In the light of this testimony, we think it plainly a question for the jury.[1]

Should the judge have held that, under the facts shown, it was the duty of plaintiff's husband to stop and listen before getting so near the railway crossing that his horse might be frightened at the approach of the train?    The husband testified that he waited two hours to make sure that the train had passed; that he inquired, and was told that it had, and so believed.    This testimony indicates that he did not like to meet the train upon the parallel road, though he testifies that he had done so without accident, and would not have expected an accident had he met it on this occasion.    On the other hand, it shows some effort to avoid accident.    It has been held in many cases that, before venturing upon a track where the view of an

---

[1] In answer to a special question, the jury found that the signals were not given.

approaching train is cut off, the traveler should stop and listen, but we are cited to no case where the doctrine is applied when the driver is at a distance from the track, and the injury results from the fright of the horse. There is a difference between the risks attendant upon the upsetting of a vehicle and those involved in a railway collision. The latter always occurs if the traveler is on the track at the right time, and the results are so uniformly disastrous to those who venture as to leave no room for a difference of opinion about the propriety of taking any chances. In the other case there is more room for a difference of opinion. 'First, the consequences are not usually so serious. Much depends on the disposition and character of the horse and the proficiency of the driver, while the width and condition of the highway are matters to be considered. It is said that the plaintiff would have been no better off had she been at any other point upon the highway for a distance of three-fourths of a mile. Had he seen the train or heard the signals in time, the driver might have turned his horse around, or taken him by the head, or driven him up to a fence, or taken some other means for the personal safety of himself and wife. We do not feel warranted in saying that it was negligent for the plaintiff's husband to drive within 35 feet of this track without stopping to listen, lest he take the chances of being upset. On the other hand, we have no occasion to say that it was not. The question was for the jury to apply the test of what an ordinarily prudent and careful man would do under just such circumstances as these, and determine whether the conduct of the plaintiff and her husband was negligent or not.

Defendant complains that the plaintiff's husband was permitted to testify that the horse was frightened by the train, upon the ground that the question was for the jury, and that the evidence involved a conclusion. In *Geveke v.*

*Railroad Co.*, 57 Mich. 589, such evidence was held competent, where the horses were immediately in front of a locomotive when the engineer allowed steam to escape from its cylinders; and in this case the other evidence clearly shows the cause of the fright of the horse, and the opinion of the witness, if inadmissible, worked no injury to the defendant.

In the course of his charge the court said:

" Some of plaintiff's witnesses have testified that they were looking and listening for approaching trains, and that if the whistle had been blown, and the bell had been rung, as ·required by law, they could and would have .heard them."

This is said to be error, for the reason that no witness so testified, and, furthermore, such testimony had been excluded upon the ground that it was opinion evidence, and the question one for the jury, and not for the witness.

It is not uncommon for trains to pass, giving signals, without notice on the part of bystanders. It is, in such ·cases, a matter of inattention; and, if one does not notice them, about all that can ordinarily be said is that he did not notice or hear them. Such evidence is negative testimony, unless there be something in the circumstances tending to show a probability that they would have been heard if given.[1] No witness who was looking and listening for the train testified, that he could and would have heard these signals had they been given. The witness Howard, who swears positively that the signals were not given, did not say that he was listening for the whistle, and manifestly he was not looking for the train upon which he was riding. No witness was allowed to say that he could and would have heard them, though several were evidently within hearing distance. Whether their testi-

---

[1] See *Sanborn v. Railroad Co.*, 99 Mich. 1, and note.

mony was more than negative testimony or not, it was certainly allowed to go to the jury as positive evidence when they were told that the witnesses had testified that they were looking and listening for the train, and could and would have heard the signals had they been given. We think counsel owed it to the court to call attention to this misstatement, which was doubtless inadvertent, at the time it was made. But the statute[1] abolishing the salutary rule requiring exceptions to be taken to the charge before verdict, while the court has an opportunity to correct any errors that he may have made, permits error to be assigned after verdict; and, as this was clearly prejudicial, we feel constrained to reverse the judgment, and order a new trial.

The other Justices concurred.