MATHEW JENSEN v. THE MICHIGAN CENTRAL RAILROAD
COMPANY.

*Railroad companies—Accident at crossing—Evidence—Contributory
negligence.*

1. Where the jury, in a negligence case against a railroad company, find specially that but one of the required statutory signals was given before crossing a country highway, the negligence of the defendant is established.[1]

2. Where a witness, upon being asked on his cross-examination in regard to certain statements claimed to have been made by him at a given time and place contradictory of his testimony upon his direct examination, either denies making said statements or testifies that he does not remember making them, it is competent for the party so cross-examining, for the purpose of impeaching the witness, to introduce evidence tending to show that he made said statements.

3. Where a driver is unable to see an approaching train for a distance of 128½ feet from the crossing, it is contributory negligence for him to drive that distance, and attempt to cross the track, without stopping his team to listen.[2]

4. It is contrary to good sense and the best-considered authorities that one may walk a team over a hard road for a distance of 128½ feet, while he and his companion are engaged in conversation, upon the assumption that no train will appear while they are traversing that distance, or that, if a train does approach, they will hear the whistle or the bell. A traveler, under such circumstances, not only endangers his own life

---

[1] 3 How. Stat. § 3375, provides that a bell of at least 30 pounds' weight, and a steam whistle, shall be placed on each locomotive engine; that said whistle shall be twice sharply sounded at least 40 rods before a crossing is reached, and after the sounding of the whistle the bell shall be rung continuously until the crossing is passed, under a penalty of $100 for every neglect. This provision, in so far as it requires the sounding of the whistle, does not apply to street crossings within the limits of incorporated cities or villages, unless the giving of said signal is required by the proper municipal authorities.

[2] See note at the end of the opinion.

and property, but the lives and property of those on board the train, and he will not be permitted to say that, if the whistle had been sounded, he would have heard it, it being his duty to stop the noise he is making, within a reasonable distance from the railroad track, and listen.

Error to Washtenaw.    (Kinne, J.)    Argued April 10, 1894.    Decided September 25, 1894.

Negligence case.    Plaintiff brings error.    Affirmed.    The facts are stated in the opinion.

*J. H. Aiken* and *Thompson, Harriman & Thompson,* for appellant.

*John F. Lawrence,* for defendant.

GRANT, J.    Plaintiff was injured while crossing the defendant's road over a public highway in the country, near the village of Chelsea.    The railroad at this point runs east and west.    Parallel with and adjoining it upon the north is a public highway, three rods wide.    The accident happened in the highway running north and south at right angles with the highway above mentioned.    The house of one Downer was situated to the north of the highway, and east of an extension of the east line of the north and south highway.    The railroad had two tracks. The accident happened at 9 o'clock in the morning. Plaintiff had drawn a load of poultry to Downer's house with a team of two large horses and a lumber wagon. After unloading the poultry, Downer requested plaintiff to take a calf for him to the village.    Plaintiff inquired if he would have to cross the railroad track, to which Downer replied that he would.    The calf was in the field, and, while Downer went to get some bran for the purpose of catching the calf, plaintiff stood upon the ground by the side of his wagon, and testified that he then looked and

listened for a train. His testimony upon this point is as follows:

" The house was north of me, so I could not see the railroad. I could see east. I could not see the railroad track because of an orchard and big maple tree, and picket fence and ivy on it.    *    *    *    I stood by my wagon and looked, but I could not see anything on account of the orchard and maple trees and ivy."

Downer came with a pail of bran, and both got into the wagon, in which there was no seat. They stood up. Plaintiff drove, and Downer stood with one hand upon his shoulder. They were talking from that time until the accident occurred. Neither saw the train until the horses were close to the track. Downer, in the excitement, told plaintiff that the train was coming, and jumped from the rear of the wagon without injury. Plaintiff hurried his horses, and got them across the track, but the rear of the wagon was struck by the engine.

The distance from the point at which they started, to the railroad track, was 128½ feet, and the team walked the entire distance until the train was seen approaching. Plaintiff did not stop during that distance, but testified that he looked in both directions, and that he knew a train might be coming. The speed of the train was about 50 miles an hour. It is conceded by plaintiff's counsel that, when plaintiff entered the east and west highway from the north, he could have seen the track at a point about 80 rods east, and from that point for nearly a mile further east, from which direction the train was approaching. The distance from the north line of the railroad track to the north line of the right of way is 18 feet. There is a slight elevation extending back from the railroad, and from the track to the top of this elevation is 33 feet. There is no cut in the highway, but its bed is even with the surface of the ground. To the east of

the highway, and between it and the railroad right of way, were some bushes, which, it is claimed, obstructed the view. The train was 500 feet long. It was demonstrated by actual experiment that from the north side of the east and west highway, where plaintiff entered it, for a distance of 23 feet, the track was in plain sight for about a mile beyond these bushes, the eastern end of which was about halfway between the crossing and the whistle post.

The negligence alleged was the usual one in such cases,— failure to blow the whistle and ring the bell. The jury, in reply to special questions, found that the bell was rung, but that the whistle was not blown. The negligence of the defendant was, therefore, established. The jury found that the plaintiff was not entitled to recover, because of his own contributory negligence. The court instructed the jury that a failure either to blow the whistle or ring the bell was negligence. The charge of the court was very clear and explicit. Errors are alleged upon the admission of evidence and the charge of the court.

1. Downer was a witness for the plaintiff. When upon the stand he was asked in regard to certain statements claimed to have been made by him contradictory of his testimony upon the direct examination. These statements were either denied by him, or he testified that he did not remember them. The time and place of these conversations were fixed. The defendant introduced evidence tending to show that Downer had made such statements. One witness testified:

"I heard Mr. Downer say he never thought of the railroad at all. He said they were busy talking, and never thought about the railroad, and drove right on."

The precise claim of plaintiff's counsel is that these conversations were not a part of the *res gestae,* and were incompetent to charge the plaintiff with negligence. It is

a sufficient reply to this to say 'that they were neither offered nor received for that purpose, but for the purpose of impeaching the testimony of the witness Downer. For this they were competent.

2. The jury, under the plaintiff's own evidence, arrived at the correct conclusion. If it was a fact that the plaintiff, as he testified, could not see an approaching train for 128½ feet, it was clearly his duty to stop and listen. It is a settled rule that a railroad crossing is notice of danger, and that in the country it is lawful to run trains over these crossings at the highest rate of speed. It is contrary to good sense and the best-considered authorities that one may walk a team over a hard road, while he and his companion are engaged in conversation, upon the assumption that no train will approach while they are traversing that distance, or that, if it does approach, they will hear the whistle or the bell. *Brady v. Railroad Co.,* 81 Mich. 616; *Kwiotkowski v. Railway Co.,* 70 Id. 549; *Shufelt v. Railroad Co.,* 96 Id. 327; *Gardner v. Railroad Co.,* 97 Id. 244; *Railway Co. v. Stommel,* 126 Ind. 35; *Railroad Co. v. Beale,* 73 Penn. St. 504; *Chase v. Railroad Co.,* 78 Me. 353; *Flemming v. Railroad Co.,* 49 Cal. 253; *Henze v. Railway Co.,* 71 Mo. 636; *Pence v. Railway Co.,* 63 Iowa, 746; *Merkle v. Railroad Co.,* 49 N. J. Law, 473; *Railway Co. v. Adams,* 33 Kan. 427. A traveler, under such circumstances, not only endangers his own life and property, but the lives and property of those on board the train. He is not permitted to say that, if the whistle had been blown, he would have heard it. It is his duty to stop the noise he is making, within a reasonable distance from the track, and listen. Under the circumstances of the case, plaintiff's listening when 128½ feet distant was not the exercise of proper precaution, and he was guilty of contributory negligence in driving upon the track as he did. It was impossible for the jury to

reach any other conclusion than that very slight precaution on the part of the plaintiff would have avoided the accident. Plaintiff and Downer were so inattentive, or the horses and wagon were making so much noise, that they failed to hear the ringing of the bell. If they had stopped for a moment, when within 50 feet of the track, they would have heard the bell, and thus have received warning of the danger.

It is not necessary to consider the alleged errors in the charge of the court. Where, under the plaintiff's own case, the court should have directed a verdict, errors in the charge are immaterial.

The judgment must be affirmed.

McGRATH, C. J., LONG and HOOKER, JJ., concurred with GRANT, J. MONTGOMERY, J., concurred in the result.

---

### RAILROAD CROSSINGS.

For cases bearing upon the duty of looking and listening, or stopping and listening, before crossing or attempting to cross a railroad track, see:

#### General Rules Applicable to the Subject.

1. *Railroad Co. v. Miller*, 25 Mich. 274, holding that a person about to cross a railroad track is bound to recognize the danger, and to make use of the sense of hearing as well as of sight—and, if either sense cannot be rendered available, the obligation to use the other is the stronger—to ascertain, before attempting to cross, whether a train is in dangerous proximity; and if he neglects to do this, but ventures blindly upon the track, without any effort to ascertain whether a train is approaching, it must be at his own risk. Such conduct is, of itself, negligence, and should be so pronounced by the courts as matter of law.

2. *Mynning v. Railroad Co.*, 64 Mich. 93, holding that the legal presumption is that a person killed at a railroad crossing did stop, and look and listen, before attempting to make the crossing, and said presumption will prevail in the absence of direct testimony on the subject; but where there is affirmative, direct, and creditable testimony to the contrary, the presumption is rebutted and displaced.

3. *Guggenheim v. Railway Co.*, 66 Mich. 150, holding that while it is the duty of a traveler before crossing a railroad track, under all circumstances, to look and listen for an approaching train, he is not bound to the same degree of care where no train is due, and he has no knowledge of its approach, as when these conditions confront him.

4. *Houghton v. Railway Co.*, 99 Mich. 308, holding that a traveler is never justified in assuming that he can surely drive a certain distance, and cross a railroad track, before a train can reach the crossing, unless it be shown that he has had an uninterrupted view of the track 'for so great a distance as to justify such assumption.

5. *McCullough v. Railway Co.*, 101 Mich. 234, holding that while it has been held in many cases that, before venturing upon a railroad track at a point where the view of an approaching train is cut off, the traveler should stop and listen, the doctrine has never been applied to a case where the driver is at a distance from the track at the time of the accident, and the injury results from his horse taking fright at the train, and running away.

### Illustrative Cases.

1. *Railway Co. v. Miller*, 46 Mich. 532, where plaintiff, a farmer, aged 67 years, and somewhat deaf, was driving a spirited team of well-broken three-year-old colts, that had never seen or been near the cars, towards defendant's track, down a narrow road, which, as it approached the track, had been cut down, leaving quite high embankments, which prevented a view of the track in the direction from which the locomotive approached. Plaintiff, when about 16 rods from the track, stopped his team and listened, and, hearing nothing, drove on, and, when within about two rods of the track, he saw the locomotive approaching, about 12 rods distant. Fearing that he could not control his colts where they were, plaintiff whipped them up, and attempted to cross the track, and the rear of his buggy was struck by the locomotive. And it was held that the question whether plaintiff was guilty of contributory negligence was for the jury.

2. *Haas v. Railroad Co.*, 47 Mich. 401, where a team driven by plaintiff's decedent collided with one of defendant's regular passenger trains at a country highway crossing. Defendant's road and the highway were both below the general surface of the ground, and an approaching train could only be seen occasionally by one driving towards the crossing. Decedent was familiar with the crossing, but, except that he checked his team for a moment some four rods from the crossing, he did not observe any precaution. The engine whistle was duly sounded when the crossing was approached. And it was held that the decedent was chargeable with negligence directly contributing to the collision.

3. *Palmer v. Railroad Co.*, 56 Mich. 1, where plaintiff, on ,approaching a city street crossing on defendant's road, driving a spirited team, looked north upon the track, and saw an engine pass in that direction, and, as he drove on, he kept a sharp lookout for what might be coming from the south, not apprehending any immediate danger from the north, after seeing the engine pass. While thus looking south he heard no signal or train, but, just as his team was crossing the track, he heard a man halloo. As he turned to look north, the engine came backing down with great speed, and, before plaintiff could get across the track, the tender struck his load, threw him out, and greatly injured him. Some of the facts upon which it was claimed the contributory negligence of the plaintiff arose were disputed. And it was held that where, upon the undisputed testimony, it appears that the plaintiff exercised no care to avoid danger, the question then becomes one for the court; but that when the evidence shows or tends to show that the plaintiff was vigilant in his efforts in the right direction to avoid the danger, but they did not go to the extent, for any reason, of securing his escape, it is for the jury to say, under all the circumstances, whether he was negligent in not exercising more care, especially in a case where, if the defendant had performed its duty, the plaintiff would have been likely to have avoided the danger altogether.

4. *Staal v. Railroad Co.*, 57 Mich. 239, where plaintiff's decedent was killed in the day-time, while trying to drive across defendant's track at a city street crossing. And it was held that, in the absence of any knowledge as to what was in the mind of the decedent, he could not be conclusively found negligent, unless no sensible explanation of his conduct was reasonably possible; that he had a right to suppose that the defendant would not violate any legal duty, and would not fail to take reasonable measures to prevent mischief; that he could not be blamed for doing as seemed best under the circumstances, and it would not necessarily be reckless to go forward rapidly.

5. *Rhoades v. Railway Co.*, 58 Mich. 263, where plaintiff's decedent approached a country highway crossing on defendant's road at an acute angle, in a buggy drawn at an easy trot by a horse and a mule. A regular fast train, coming at the same time, and in full sight for a considerable distance if the decedent had turned his head, whistled sharply close by the crossing, and frightened the team so that it became unruly, and ran upon the track, and decedent was killed. Decedent knew the neighborhood, but was apparently ill, and drove absent-mindedly, without noticing the train until he was close to the crossing, though several of the witnesses saw the danger he was running into. And it was held that decedent was guilty of contributory negligence.

6. *Mynning v. Railroad Co.*, 64 Mich. 93, 100, where plaintiff's intestate, a man possessed of the ordinary faculties, and well acquainted with the crossing upon which he was killed, on a dark and stormy October evening walked at a rapid pace towards and upon defendant's spur track, without checking his speed, or stopping or looking or listening, or taking any precaution whatever to ascertain whether a train was about to pass. Others who were about to cross, whose opportunities for observation were no better than those of the decedent, saw and heard the train. The statutory signals were not given. And it was held that the decedent was guilty of such contributory negligence as to bar a recovery.

7. *Matta v. Railway Co*, 69 Mich. 109, 112, where plaintiff's intestate was killed while attempting to drive across defendant's track at a country highway crossing. The highway ran nearly north and south, and the railroad track crossed it diagonally, running north-east and south-west. About five rods north of the crossing, and on the east side of the highway, lying between the road and the railroad, was a cemetery, running about 35 rods along the highway. At its base at the north end, the cemetery was about 17 rods in width, and at the south end it came nearly to a point. It was filled quite thickly with oak grubs or young oak trees, most of them from 10 to 12 feet high, and bushy. The accident took place in the winter time, and some of the leaves had fallen from the trees. Decedent was going south at a pretty fair gait, driving one horse attached to a light wagon. His face was to the west, and his back to the approaching train, which was running at the rate of 45 miles an hour. The ground was frozen hard, and the train made but little noise in running. Decedent's head was down, and he did not look up while any one saw him until the feet of his horse were on the iron of the track. He looked up at the ringing of the bell at the cattle-guard, and whipped up his horse, but it was too late to avoid the collision. The decedent was familiar with the situation at the crossing, having passed over it almost daily. But for the trees in the cemetery, the train could have been seen plainly for a distance of 80 rods before reaching the crossing, and all of the witnesses to the accident but one testified that they could see it easily enough when it was passing behind the cemetery, the trees not being thick enough to obscure the view. And it was held that, under the decisions of the Court, the circuit judge was clearly authorized to instruct the jury to find for the defendant on the ground of the contributory negligence of the decedent.

8. *Kwiotkowski v. Railway Co.*, 70 Mich. 549, where plaintiff's decedent was killed by being struck by a locomotive as he was stepping upon defendant's track at a city street crossing. The

evening was dark and rainy. Decedent was seen to stop opposite an office, and apparently peer into the window. It was about 20 feet from the side of the office to the track, and about four feet from the window to the side of the office. As a person passed by the office, he could see down the railroad track about a block. A few steps more, and the track was in plain sight for a long distance. The train had a blazing head-light, which lighted the track for at least a block. The defendant's employés were negligent in running the train at a rate of speed greater than that allowed by the ordinance. And it was held that the plaintiff's intestate was negligent in not looking for the approach of the train; that, if he had looked, he would have seen it, as there was no obstruction in the way, and no other trains or any other thing to distract or confuse his vision; and the action of the court in directing a verdict for the defendant, upon the ground that the facts established showed contributory negligence on the part of the plaintiff's intestate, was sustained.

9. *Freeman v. Railway Co.*, 74 Mich. 86, where plaintiffs sued for the value of a horse and carriage destroyed by collision with an engine on defendant's track at a city street crossing. And it was held that the driver, who was familiar with the situation at said crossing, was guilty of contributory negligence, it appearing that, if he had looked up the railroad track at any time while passing over the 40 feet last traversed before driving upon the track, he must have seen the approaching train, and thus been enabled to avoid the collision.

10. *Underhill v. Railway Co.*, 81 Mich. 43, where plaintiff's decedent, while driving a horse and carriage across defendant's track, was struck by the engine of a passenger train, and instantly killed. Upon the case as the plaintiff left it at the close of his testimony, the jury might have inferred that the deceased approached the track with due care, and stopped and looked and listened at the proper distance from the track, and, hearing no signal of an approaching train, acted as a prudent person would in attempting to cross the track. The defendant showed by the undisputed testimony of the fireman that he saw the decedent approaching the track at a distance of about 50 feet from the track; that, by her actions, he thought she was trying to get across the track ahead of the train; that she was "slashing" the horse with the lines; that she did not seem to pay any attention to the train, which was then about 300 or 400 feet from the crossing. And it was held that this testimony bore directly upon the negligence of the deceased, and, being undisputed, showed that she was guilty of contributory negligence which precluded a recovery.

11. *Guta v. Railway Co.*, 81 Mich. 291, holding plaintiff to have been guilty of contributory negligence in attempting to cross de-

fendant's track without looking to see if a train was approaching, his opportunities for seeing the train being as good as those of witnesses who saw plaintiff drive upon the track, when the train was approaching, as if it were not coming.

12. *Brady v. Railroad Co.*, 81 Mich. 616, holding plaintiff to have been guilty of contributory negligence in attempting to cross defendant's track at a crossing so obstructed by intervening objects that he could not see a train approaching from one direction until he was within 20 or 25 feet of the crossing, and then only for a few rods up the track, without first stopping his team, and taking some precaution to see if a train, which he knew was about due, was approaching.

13. *Richmond v. Railway Co.*, 87 Mich. 374, where plaintiff's intestate, a street-car driver, was killed at a railroad crossing by a collision with nine detached freight cars, running at the rate of from 8 to 10 miles per hour, without any warning of their approach other than the noise made in running. The flagman was not at his usual post of duty, and gave no warning of danger until the horse was upon the crossing. After leaving another railroad crossing, about 185 feet from the one where the accident occurred, the driver could not have seen the approaching freight cars until within 20 feet of the crossing where he was killed, and he did not look in the direction from which the cars were approaching, after reaching said point, until his horse was upon the track. And it was held that the question of his negligence (that of the defendant being apparent) was for the jury, who were to determine whether, under the circumstances, the driver had the right to rely, and how far, upon the absence of the flagman from his post of duty, and the want of any signal of danger from him, as an assurance of safety; and, if they found that an ordinarily prudent man would have acted as the driver did, the plaintiff could recover.

14. *Grostick v. Railroad Co.*, 90 Mich. 594, where plaintiff brought an action for the alleged negligent killing of her husband, while attempting, in the day-time, to cross defendant's track with his team at a street running at right angles with said track. The deceased was a man 50 years of age, of good health, sound in mind and body, his hearing and sight not defective, and was thoroughly familiar with the crossing. When within 120 feet of the crossing, and until he reached it, the decedent had a clear view of the railroad track for a distance of 1,150 feet, in the direction from which the train was approaching. According to the testimony, he exercised no care whatever, but drove his team along without looking in that direction until he was struck and killed. And it was held that this was such carelessness as to bar a recovery.

15. *Thayer v. Railroad Co.*, 93 Mich. 150, where plaintiff's horse was frightened by three sharp whistles from a locomotive when within from 30 to 50 feet of defendant's tracks, on a narrow approach on a highway, and plaintiff was thrown out of her buggy down an embankment. The highway ran east and west, and crossed the tracks over a fill between two cuts, one about 20 rods south of the highway, and the other from 40 to 80 rods north, both cuts being deep enough to hide an approaching train. The grade from the crossing north to the cut rose about 18 feet, and between the cuts the grade was raised from 3 to 6 feet above the adjoining lands, and at the crossing the railroad track was about 6 feet above the former grade of the highway. The road was soft; the morning misty. When 40 rods from the crossing plaintiff stopped, looked, and listened, and spoke to her daughter, who was with her, about listening for trains. On approaching the crossing, she noticed children coming south upon the track, and, when she reached a point 150 feet from the crossing, she again stopped, looked, and listened, and then started up the approach. When within 30 feet of the tracks, her daughter told her that the children had left the track. She looked and saw the train, and then attempted to back away from it, and had backed about the length of the buggy, when the whistles were sounded, whereupon the horse, which was quiet and manageable until the whistles sounded, reared, and jumped down the embankment. And it was held that the question of plaintiff's negligence was properly submitted to the jury.

16. *Van Auken v. Railway Co.*, 96 Mich. 307, holding that whether or not a traveler who is injured upon a railroad crossing in the open country on a dark night, by a train running without a head-light, is guilty of contributory negligence in failing to stop his team before entering upon the track, in order to listen for an approaching train, is at least a question for the jury, his view of the track being unobstructed other than by the darkness.

17. *Shufelt v. Railroad Co.*, 96 Mich. 327, where plaintiff's wife was held to have been guilty of such negligence in failing to stop her team, and look and listen for an approaching train, before attempting to cross defendant's track, as to bar a recovery, it appearing that had she done so she could have seen the train when she was at a distance of from 18 to 20 feet from the crossing.

18. *Gardner v. Railroad Co.*, 97 Mich. 240, holding plaintiff to have been guilty of such negligence in not looking in the direction of the approaching train, by which he was injured, when within 5 feet of the railroad track, and when, if he had looked, his view would have been unobstructed for a distance of 250 feet, as to bar a recovery.

19. *McDuffie v. Railway Co.*, 98 Mich. 356, holding that a driver who stopped his team when within 12 feet of a railroad crossing, and at a point from which, had he looked, he could have seen an approaching engine but for the smoke and steam emitted by another engine standing on a side track near by, which obstructed his view, and who testifies that he looked and listened, and neither saw the approaching engine nor heard the ringing of its bell or sounding of its whistle, cannot be said, as matter of law, to have been guilty of contributory negligence in attempting to make the crossing.

20. *Houghton v. Railway Co.*, 99 Mich. 308, holding plaintiff to have been guilty of such negligence in failing to stop his team and listen for a fast train, which he knew was about due, while driving, after dark, a distance of 196 feet in approaching a railroad crossing, during which time his view of the track was obstructed, as to bar a recovery.

21. *McCullough v. Railway Co.*, 101 Mich. 234, where plaintiff was injured by being thrown from a cutter, in which she and her husband were riding, by reason of the horse taking fright at one of defendant's trains, and running away. The train was several hours late. The highway ran for about three-quarters of a mile nearly parallel with the railroad track, varying in distance therefrom from 35 to 200 feet, and finally crossed the track, near the place where the accident occurred, at an angle of about 45 degrees. All view of trains approaching the crossing from the opposite direction was cut off, until within 35 feet of the track, by a hill, around which the road passed on a sharp curve. Plaintiff's husband, who was driving, testified that he waited in a neighboring village for two hours to make sure that the train had passed, and on his way home was informed that it had passed, which information he believed to be true; that he was approaching the crossing, and, just as he reached the line of the right of way, the train came into view, distant less than 300 feet from the crossing, and that his horse turned about and ran away, upsetting the cutter, and injuring the plaintiff. Plaintiff and her husband both testified that they were listening, the horse having been brought to a walk, and that they heard no signals. And it was held that it was for the jury to say whether or not the plaintiff's husband was negligent in driving within 35 feet of the track without stopping to listen for a train.