BENJAMIN HAAS, ADM'R v. GRAND RAPIDS & INDIANA RAIL-
ROAD COMPANY.

*Railway crossings—Caution boards—Flagmen.*

The failure to erect a caution board at railroad crossings as required by the statute does not necessarily make the railroad company responsible for damages occasioned by a collision with one of its trains at the crossing.

The caution board is for the purposes of a notification to those who are passing along the road; and where a party is familiar with the crossing, and has frequently been over it, and had it in mind on the occasion in question as he approached it, he cannot be said to have been injured by the failure to set up the caution.

The fact that the approach of a railroad to a highway crossing is obscured by embankments, or otherwise, imposes upon travelers by the highway as well as upon the railroad company special care to avoid collisions.

47 MICH.—26

| 47 | 401 |
|----|-----|
| 69 | 112 |
| 47 | 401 |
| 81 | 623 |
| 47 | 401 |
| 86 | 505 |
| 47 | 401 |
| 90 | 598 |
| 90 | 620 |
| 47 | 401 |
| 91 | 549 |
| 47 | 401 |
| 96 | 320 |
| 96 | 345 |
| 47 | 401 |
| 109 | 587 |
| 47 | 401 |
| 117 | 276 |
| 47 | 401 |
| 119 | 100 |
| 47 | 401 |
| 121 | 286 |
| 47 | 401 |
| 142 | 382 |
| 47 | 401 |
| 157 | 166 |

A railroad company is not, as matter of law, under obligation to station a flagman at a road crossing in the country because of the approach to it being partially concealed by embankments or otherwise.

A team collided with a railway train at a road crossing, and the driver was killed. The railroad and the highway were both below the general surface of the ground, and an approaching train could only be seen occasionally by one driving towards the crossing. The driver was familiar with the crossing, but except that he checked his team for a moment, some four rods from the crossing, he did not appear to have observed any precaution. The engine whistle was duly sounded when the crossing was approached. *Held*, that the driver of the team was chargeable with negligence directly contributing to the collision, and that no action would lie by his administrator against the railroad company.

Error to Kalamazoo. Submitted Oct. 26. Decided Jan. 11.

CASE. Plaintiff brings error. Affirmed.

*H. C. Briggs* for plaintiff in error. Failure to place flagmen at unusually dangerous railway crossings is negligence: Shear. & Redf. Negligence § 484; *Chic. & Alt. R. R. v. Hogarth* 38 Ill. 378; *Eilert v. G. B. & M. Ry. Co.* 48 Wis. 606; *Mackay v. N. Y. Cent. R. R.* 35 N. Y. 80; *Bilbee v. Lond. etc. Ry.* 18 C. B. N. S. 584; *Weber v. N. Y. C. & H. R. R. R.* 58 N. Y. 458; accidents occurring where signals are not given are presumed to have been caused by the omission: *Havens v. Erie Ry.* 41 N. Y. 296; *Beisiegel v. N. Y. C. R. R.* 34 N. Y. 622; omission to stop and listen before crossing a railway track is not, as a matter of law, negligence, if it is the duty of the railroad company to give signals, and no signal is given: Cooley on Torts 664; Shear. and Redf. Negligence § 31; *Kellogg v. N. Y. C. & H. R. R.* 79 N. Y. 72; *D. & M. R. R. v. Van Steinburg* 17 Mich. 99.

*Hughes, O'Brien & Smiley* for defendant in error. An attempt to cross a railway track without trying to ascertain whether a train is approaching is negligence: *L. S. & M. S. R. R. v. Miller* 25 Mich. 274; *Penn. R. R. v. Beale* 73 Penn. St. 404; *N. Penn. R. R. v. Heileman* 49 Penn. St. 60; *Hanover R. R. v. Coyle* 55 Penn. St. 401; *Allyn v. B.*

& A. R. R. 105 Mass. 77; *Butterfield v. Western R. R.* 10 Allen 532; *Wilcox v. Rome, Watertown & O. R. R.* 39 N. Y. 358; *Baxter v. Troy & Boston R. R.* 41 N. Y. 502; *Bellefontaine R. R. v. Hunter* 33 Ind. 304; *Telfer v. Northern R. R.* 30 N. J. L. 188; *Haines v. Ill. Cent. R. R.* 41 Ia. 227; *Stubley v. L. & N. W. Ry.* L. R. 1 Ex. 13.

COOLEY, J. The plaintiff as administrator of the estate of Adrian Leenders, deceased, sued the railroad company for causing the death of his intestate by negligently running one of its trains so as to collide with his team while he was crossing its track in passing along the public highway. In the circuit court the case was taken from the jury by the instruction of the judge that they should return a verdict for the defendant. The instruction seems to have been given because in the opinion of the judge the declaration united two inconsistent causes of action; but as the plaintiff was suffered to put in all his evidence, if the case is fatally defective for any reason, it is immaterial whether the reason upon which the circuit judge acted was or was not the correct one.

The defense insisted in the court below, and insist here, that the only negligence which was shown in the case was imputable to Leenders himself, who carelessly drove against the train though he had fair warning of its approach. This claim makes it necessary to examine the evidence, and fortunately the record shows very little conflict.

The collision occurred at a road crossing about two miles south of Kalamazoo. The highway is an east and west road crossing the railroad nearly at right angles. The railroad for a considerable distance south of the crossing runs through a cut which in some places is sixteen feet deep, with occasional depressions in the banks through which an approaching train may be seen from the highway. About six hundred feet east of the crossing is a depression in the surface of the country through which flows a brook in a general direction parallel to the line of the railroad. The highway crosses this brook by a bridge, and gradually

ascends from the bridge until it reaches within three rods of the railroad, and from thence to the crossing is about on a level with the railroad track. On the south side of the highway as the railroad is approached the bank ascends abruptly from the beaten track twelve or fifteen feet in height. The time of the collision was about seven o'clock in the morning of August 15, 1878. The train was a regular passenger train which for a long time had been accustomed to pass at about that time. Leenders was familiar with the crossing, having passed it frequently, and he was also familiar with this train and knew what its time was. He was on this occasion driving a span of horses before a double wagon, and was seated upon a board laid across the bolsters. This placed him a little lower in his seat than he would be if seated in almost any vehicle in common use on the roads. He was approaching the railroad from the east, and the train was coming from the south. A witness named Ives was driving another team behind him, and stopped at the brook to water his horses. He heard the train approaching, and heard the whistle sounded three times distinctly at about at the usual distance for sounding it from the crossing. He heard no bell, but the whistle apparently attracting his attention, he looked up at the team Leenders was driving and saw it approach the railroad. When at the summit of the elevation Leenders seemed to come to a halt, but immediately started up again on a trot. Ives could see the top of the engine and the heads of the horses as they approached each other, but could not see Leenders. The engine seems to have reached the crossing a moment before the horses did, and the collision seems to have been with the side of the engine throwing Leenders from his wagon causing fatal injuries. This is a brief statement of the facts. The plaintiff offered to prove that there was no warning board at the crossing, but the offer was overruled. If the fact when proved would have been important, the plaintiff is entitled to the benefit of it now.

It is argued on the part of the plaintiff that these facts show negligence in the railroad company resulting in the

collision. The particular faults attributable to the company are enumerated, and they may be considered in detail.

*First.* It is said the plaintiff offered to prove and could have proved that the company had neglected to comply with the provision in the act of 1875 (Public Acts p. 138) which requires that a sign-board with the words " Railroad Crossing" shall be posted at the crossing of public roads. This posting is required for the protection of the public, and though a penalty is imposed for neglect, individuals may no doubt have a remedy also in case of injury attributable to it. But there is no claim, pretence or suggestion in this case that the collision had any connection whatever with the failure to post the sign-board, or was in any manner influenced or affected by it. The sign-board is required as a warning of the existence of the crossing ; as a notification to those who might not observe or be otherwise made aware of the fact. But in this case the plaintiff gave evidence that his decedent was entirely familiar with the crossing; that he not only knew about it but had frequent occasion to pass over it. More than this, it was a part of the plaintiff's case that the decedent had the crossing in mind when he approached it on the occasion in question, and checked his team to listen for signals of approaching trains. After this showing by the plaintiff himself it was of no importance in the case that the railroad company had failed to erect the caution board. The duty to erect it was a duty to the public; and no private action could be grounded upon the neglect unless individual injury was traced to it. *Pakalinsky v. N. Y. Central etc. R. R. Co.* 82 N. Y. 424.

*Second.* It is said there was evidence from which the jury might have found that the bell was not rung continuously for forty rods before the engine reached the crossing, as is also required by the same statute. We doubt if there was such evidence. There was negative evidence that some parties who were in the vicinity did not hear or did not notice the ringing of the bell; but some of these were on the cars, and some were where the banks of the excavation tended to interrupt or to deaden the sound ; and if the

bell was rung, there was nothing remarkable and nothing surprising in the fact that persons in the vicinity, with their thoughts presumptively on their own affairs, failed to notice it. The affirmative evidence that the bell was rung is very full and positive. It is conceded by the plaintiff that the whistle was sounded three times distinctly, and this is always the more effective warning, and far the more likely to attract attention. Every one who was in the vicinity, and who was summoned as a witness, noticed this warning; even those who were upon the train, and whose location was least favorable for the purpose. The jury could scarcely have found that the decedent alone failed to hear it, if he listened, as it is assumed he did.

*Third.* It is said this crossing was so peculiarly dangerous, because of the excavations through which are run both the highway and the railroad, that the railroad company did not discharge its full duty to the public unless it stationed a flagman there to give warning of approaching trains, and that the failure to have such a flagman was negligence directly contributing to the casualty. It would no doubt have tended to the security of travelers had a flagman been kept at this point as is suggested, but there is no statute requiring it, and the judiciary cannot establish police regulations on their own judgment where the Legislature has apparently considered none essential. This was the crossing of a common highway, in the open country, with nothing to render it unusually hazardous except the fact of excavations; but over the banks a train would be seen at intervals by one who was approaching the crossing, and with ordinary care it would seem that he must avoid any collision. The crossing of the two roads was on a level, and unless one was approaching with an unmanageable team, there should have been no difficulty in stopping if danger was perceived. There must be many more dangerous crossings of country roads than this. Before we could say that the neglect to station a flagman at it was culpable fault, it should be made to appear that the danger was altogether exceptional; that there was something in the case which rendered ordinary

care on the part of the traveler an insufficient protection against injury, and therefore made the assumption of this burden on the part of the railroad company, of the employment of a flagman, a matter of common duty for the safety of others. This does not appear to be such a case.

But the fatal defect in the case of the plaintiff is the negligence of the decedent himself. There is- not in the evidence the slightest indication that he observed any precaution whatever, unless his checking his team when three rods or so from the crossing is to be referred to prudence. With respect to this we are left to conjecture; we only know that there was evidence tending to show that the decedent checked his team for an instant, and that he then went forward upon a brisk trot until the heads of his horses came in collision with the engine. To excuse this we are told that the crossing was peculiarly exposed to danger because of the banks on either side of the approach; and that it was the duty of the railroad company because of this to observe extraordinary precautions. We may concede this, but it does not aid the plaintiff. The peculiar risks of the crossing imposed upon the decedent the duty of special caution also; and as he knew that a regular train was due at the crossing at about that time, he was under the highest possible obligation to observe such precautions as would be needful to avoid a collision. *Pennsylvania R. R. Co. v. Beale* 73 Penn. St. 504. We may concede that the railroad company failed to sound the bell; but this did not relieve the decedent from the duty of taking ordinary precautions for his own safety. *Railroad Co. v. Houston* 95 U. S. 697, 702. And what ordinary prudence would demand must be determined on a view of all the circumstances. It is vain to urge or to pretend that ordinary precautions were made use of in this case. To move forward briskly as the decedent did, from a point whence an approaching train would not be seen, at a time when it was known by him that a train was due, and not to pause until the train was encountered, was so far from being ordinary prudence that it approached more nearly to absolute reck-

lessness. This subject was fully considered in *Lake Shore etc. R. R. Co. v. Miller* 25 Mich. 274, on facts much resembling these, and the conclusion was reached that the contributory negligence precluded any recovery. That case must rule this. The cases of *Chicago etc. R. R. Co. v. Lee* 87 Ill. 454; *Hearne v. Railroad Co.* 50 Cal. 482; *Toledo etc. R. R. Co. v. Shuckman* 50 Ind. 42; *Chicago etc. R. R. Co. v. Dimick* 2 Am. & Eng. R. R. Cas. 201; *Henze v. St. Louis etc. R. R. Co.* ibid. 212, and many others, too numerous to be collated here, are to the same effect.

There is no error in the record, and the judgment must be affirmed with costs.

The other Justices concurred.