LOUISVILLE, NEW ORLEANS & TEXAS RAILWAY CO. *v.* GEORGE FRENCH.

| 69 | 121 |
| 71 | 255 |
| 69 | 121 |
| 76 | 415 |

1. RAILROADS. *Signals at crossings. "Highways."* Code 1880, § 1048.

Section 1048, code 1880, requiring the ringing of the bell or blowing of the whistle of locomotives when crossing highways, does not apply to towns and cities, but only to highways in the country.

2. SAME. *Use of streets. Duty of company and public.*

A railroad company operating its road through a public and much-frequented street of a city must exercise a very high degree of care to prevent injuries, and persons traveling such street, in view of the greater danger, must likewise be held to the exercise of greater caution.

3. SAME. *Rate of speed in corporate limits.* Code 1880, § 1047.

Section 1047, code 1880, fixing six miles an hour as the maximum speed of locomotives and cars in towns and cities, does not confer the right to maintain that rate of speed where, under all the circumstances, the exercise of reasonable caution would require that they be run more slowly·

FROM the circuit court of Warren county.
HON. J. D. GILLAND, Judge.

This action was instituted by George French, a minor twenty years old, by his next friend, against the Louisville, New Orleans & Texas Railway Co. to recover for personal injuries. The track of appellant's railroad extends along the center of Levee street, in Vicksburg, for nearly half a mile. This street is a narrow one, and, where the accident to plaintiff occurred, is lined on both sides by houses. Clay street crosses Levee street at right-angles. On the occasion in question plaintiff was driving a delivery-wagon down Clay street, intending to turn into and go down Levee street. The presence of an electric light pole standing at the junction of the two streets necessitated his driving around it and going upon the track of the railroad. As he was crossing the track he heard a freight-train approaching, and, in

order to avoid it, turned quickly to one side, but his wagon was caught by the projecting side of a freight-car and lifted up, and he was thrown violently to the ground and his leg broken.

On the part of plaintiff there was evidence that plaintiff was driving slowly, and that the train was running more than six miles an hour—in fact, very rapidly—and that the bell was not ringing or the whistle blowing; that plaintiff, before driving on the track, looked and listened for the train, but could not hear the train approaching owing to the noise made by escaping steam from steam-boats in the river near by; that the presence of the electric light pole and some lumber piled in the street, and the depth of the gutter along the street, prevented his getting without the reach of the moving cars.

For the defense there was evidence that the train consisted of thirty-seven loaded freight-cars; that it was moving up grade, and the engine necessarily made a great deal of noise; that it was moving very slowly, and the engineer, who was at his post and on the lookout, discovered no one on the track or in dangerous proximity to it; that plaintiff, coming to Levee street, could not see up the track because of the building on the corner, and that he did not stop before going upon the track.

It is not deemed necessary to set out at greater length the evidence, since this statement is sufficient for an understanding of the matters discussed in the opinion.

Among the numerous instructions given for plaintiff was the following:

" 8. It is the duty of every railroad company to cause each locomotive-engine run by it to be provided with a bell of at least thirty pounds weight, or a steam-whistle which can be heard distinctly at a distance of three hundred yards, and shall cause the bell to be rung or the whistle to be blown at a distance of at least three hundred yards from the place where the railroad crosses over any highway or street, and the

bell shall be kept ringing or the whistle shall be kept blowing until the engine has crossed such highway or street, or has stopped; and if the jury believe, from the evidence in this case, that the collision with the plaintiff's wagon was the result of a neglect to perform this duty, then the jury should consider such facts in determining the question of defendant's negligence."

The court refused to grant the fourth instruction for the defendant, which was as follows:

" The court instructs the jury for the defendant that when one approaches a crossing which is dangerous from the fact of the view being obstructed on both sides by houses, and that the surroundings, such as steam-boats escaping steam and steam-whistles sounding, or other noises, prevented one from hearing readily, then this imposed upon the plaintiff a greater degree of vigilance and care than if he were approaching a crossing where there were no such obstacles to sight or hearing; and if the jury shall believe from the evidence that the crossing at Levee and Clay streets was dangerous on account of the above reasons, and that the plaintiff did not use due diligence to prevent coming into collision with defendant's train, then they will find a verdict for defendant."

Section 1047, code 1880, referred to in the opinion, provides that locomotive and cars shall not run through cities, towns and villages at a greater rate of speed than six miles an hour; and further provides that a railroad company shall be liable for any damages or injury sustained by any one from locomotives or cars while running at a greater rate of speed than six miles an hour through any city, town or village. Section 1048 provides that railroad companies shall cause the bell of a locomotive to be rung or the whistle to be blown at the distance of at least three hundred yards from the place where the railroad crosses over any highway, and that the bell shall be kept ringing, or the whistle shall be kept blowing, until the engine has crossed the highway or has stopped.

The trial resulted in a verdict and judgment for plaintiff

for $500.    Motion for new trial was overruled, and defendant appeals.

*Murray F. Smith,* for appellant.

Section 1047 of the code fixes the rate of speed in towns and cities at six miles an hour.    Within that rate of speed trains may be run regardless of conditions.    I find no authorities on this proposition, but the statute in effect says that six miles an hour is a safe rate of speed through cities and towns, and persons must govern themselves accordingly.

The word " highway " in § 1048 applies only to highways in the country.    This construction was placed on the same word in § 1050.    *M. & O. Ry. Co.* v. *State,* 51 Miss., 137. For this reason the eighth instruction was erroneous.

It was error to refuse the fourth instruction for defendant. It merely imposed upon the plaintiff the same measure of diligence as was imposed upon the defendant by the instructions for the plaintiff.    Beach on Con. Neg., 203, and cases cited.

*Dabney & McCabe,* for appellee.

Only one instruction asked by defendant was refused ; and, conceding that it announced a correct principle, the law on the point was fully given in other instructions.    The law in reference to crossings in general does not apply here.    This was a much-frequented street of a city, and was used for a long distance by the railroad company.    Plaintiff had as much right to use the street as the defendant.    He had a right to assume that, in view of the great danger to persons and property in running trains along the street, defendant would exercise that degree of care necessary under the circumstances, which we suggest was nothing less than running very slowly and keeping the train well under control, so that it could be stopped quickly.    The train should be as much, or nearly as much, under control of the engineer as the vehicle should be under the control of its driver.

Where railroads lie in public streets, those operating them must exercise extraordinary and the very highest degree of care. In none of the cases so holding is any thing said about the degree of care which the plaintiffs were required to take. 75 Am. Dec., 382; 7 Tex., 126; 58 Am. Dec., 407; 78 *Ib.*, 181; Sherman & Redfield, Neg., sec. 480; 5 Waits' Ac. & Def., 327.

There was evidence to show that the train was running more than six miles an hour. That the engineer did not even see the wagon or the driver, is itself evidence of negligence. The circumstances of the case demanded the utmost caution of the defendant.

Argued orally by *Murray F. Smith*, for appellant.

CAMPBELL, C. J., delivered the opinion of the court.

The eighth instruction for the plaintiff should not have been given, for § 1048 of the code, on which it was based, does not apply to towns, but to the highways in the country. Section 1047 of the code was deemed a sufficient safeguard for towns. Ringing the bell or blowing the whistle in a town may be a proper precaution in some circumstances, but it is not prescribed by statute or common law as an imperative requirement.

The fourth instruction asked by the defendant should have been given. The court had correctly instructed the jury in the fourth instruction for the plaintiff, that " in operating its road through the public streets of a city, very much in use by the public, the railroad company is held to the exercise of a very high degree of care, and must not omit any reasonable duty that may tend to the safety of the public," and the plaintiff should be required to abide by a like just rule as applied to his conduct. The greater the danger the greater the caution required to avoid it, is the rule for the railroad companies, and for those exposed to injury by them.

A greater rate of speed than six miles an hour is prohibited

by statute in towns, because ordinarily that is sufficient for the safety of persons and things, but in some conditions so great a speed as this may not be allowable; and so it is a question determinable by circumstances whether a given rate of speed is consistent with due caution. Whether the person complaining of an injury has himself exercised due caution is likewise ,to be determined by circumstances, for what would be such in one state of case would not be in another; and it is an obvious dictate of common sense that greater caution and circumspection are required of one surrounded by increased difficulties and perils beyond those usually encountered.

*Reversed and remanded for a new trial.*