VREELAND *v.* CINCINNATI, SAGINAW & MACKINAW RAILROAD CO.

RAILROAD COMPANIES—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.

A motorman who, having stopped his car 35 or 40 feet from a railroad crossing to see whether a train is approaching, attempts to cross the track without again looking for a train, although, from a point 10 feet from the center of the track, a train might be seen for a distance of 576 feet, is guilty of contributory negligence, precluding a recovery for injuries received by a collision at the crossing.

Error to Bay; Maxwell, J. Submitted April 24, 1896. Decided June 30, 1896.

Case by Edwin C. Vreeland against the Cincinnati, Saginaw & Mackinaw Railroad Company for personal

injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*T. A. E. & J. C. Weadock* (*James E. Duffy*, of counsel), for appellant.

*T. F. Shepard*, for appellee.

MONTGOMERY, J. Plaintiff was a motorman in the employ of the Bay Cities Consolidated Railway Company. On April 6, 1893, plaintiff was engaged in running a car along Henry street, in West Bay City. Henry street, at the intersection of Ninth street, is also crossed by the track of the defendant company. When the car reached the crossing, it was struck by the engine of a passing train, and thrown from the track. Plaintiff's shoulder blade was broken, and he suffered other injuries. He brings this action, claiming that the injury resulted wholly from negligence of defendant's servants, while he himself was in the exercise of due care. The alleged negligence of the defendant consisted in running the train at a prohibited and high rate of speed, and testimony fairly tended to establish such negligence. There was perhaps a question, also, as to whether the bell was rung, although the testimony on this point was negative in its character. The circuit judge directed a verdict for the defendant, on the ground that the plaintiff was guilty of contributory negligence. This direction raises the sole question in the case which we need consider.

The street-railway track occupied the center of Henry street, which runs in a north and south course. The track of the defendant road runs from the northwest, past Ninth street, in a general southeast course, curving somewhat to the south. At a point 10 feet from the center of the crossing of the two tracks, a train going northwest could be seen for a distance of 576 feet; from a point 40 feet from the intersection, a train could be seen for a distance of 567 feet; and, at a point 20 feet from the railroad track, a train would be visible for a distance of 570 feet.

Plaintiff testified that he was going north with his car, and stopped on a switch, at a point which would be about 260 feet south of the crossing, for a south-bound train to pass him; that he then proceeded north till within about 35 or 40 feet of the crossing, when he brought his car to a stop, looked in all directions, saw no train, and then started ahead again. He further testified: "I don't think I looked back up the track after I started ahead. Before I discovered the train coming, I had got about 4, 5, or 6 feet from the track. The train was then within 200 feet from me, I should think." He also testified that the motor car could have been run within 5 or 6 feet of the crossing before stopping, but that the purpose of stopping back 35 or 40 feet was to enable him to get up headway, so that he could pass over the track of the railway without current. It would seem, therefore, that, if we accept the plaintiff's statement, he intended to, and did, after stopping his car 35 or 40 feet back of the track, start his car ahead at a rate of speed intended to give it headway sufficient to pass over the track. This statement can hardly be reconciled with the fact that he must have been traveling at a rate of speed scarcely equal to two miles an hour; for if it be assumed that, when he discovered the train, 200 feet distant, he had traveled 30 feet, after his stop, the train must have traveled in the meantime not less than 376 feet, or more than 12 times as far, and the testimony of plaintiff's witnesses tends to show a rate of speed of not more than 20 to 25 miles an hour. It is also difficult to understand why, if the plaintiff was running his car at a slow pace, he could not and did not stop his car before the collision. Altogether, the most reasonable explanation is that he was mistaken in his recollection of the events; but, however this may be, we think that it was not due diligence to stop at a point so far distant from the crossing, and then proceed without looking back, as he testifies he did. See *Shufelt* v. *Railroad Co.*, 96 Mich. 327; *Houghton* v. *Railway Co.*, 99 Mich. 308; *Haas* v. *Railroad Co.*,

47 Mich. 401. The plaintiff cannot be treated in all respects like one driving an ordinary vehicle. The Public Acts of 1889 (Act No. 222, p. 330) provide:

"Street-railway companies shall require the drivers of street cars to bring such cars to a full stop before going upon a street-railway crossing of the tracks of a steam railroad, and *to make sure* that no engine or cars are approching such crossing before he proceeds to go upon the same."

The circuit judge was right in holding that the plaintiff did not use due precaution.

Judgment affirmed.

GRANT, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.