# Louisville & Nashville R. R. Co. *v.* Williams.

*Injury to Person on Track.*

(Decided Feb. 2, 1911. Rehearing denied May 5, 1911.
5 South. 218.)

1. *Negligence; Contributory Negligence; Pleadings and Proof.*— While contributory negligence is purely defensive matter, and must be pleaded and proven by the defendant, yet if the plaintiff's evidence affirmatively and conclusively shows that his own negligence proximately contributed to the injuries complained of, the defendant is relieved of this burden.

2. *Railroads; Persons on Track; Duty to Look and Listen.*—A person attempting to cross a railroad track on which cars and locomotives are liable to be moving should first stop, look in both directions and listen, before going on the track.

3. *Same.*—The fact that one train had passed is no excuse for a failure of a person about to cross the track to stop, look and listen for others, as a pedestrian is required to act on the presumption that a train may be passing at any time.

4. *Same; Contributory Negligence.*—Where a plaintiff knew his surroundings, the location of a railroad's spur track, its uses, his

proximity thereto, and that obstacles prevented his seeing the train moving thereon, and that the noise of the mill on either side of the track would drown the noise of an approaching train, yet walked out onto the track without stopping to look or listen, at a point where he could see the cars approaching, before stepping onto the track, he was guilty of contributory negligence as a matter of law.

5. *Bill of Exceptions; Contents; Maps.*—Where the bill of exceptions recited that a map had been introduced in evidence, the omission of the map from the bill did not render it so incomplete that it could not be considered as containing all the evidence; especially where the court had been furnished with maps of the locus in quo by both parties on the appeal and the place was fully described in the bill of exceptions.

APPEAL from Autauga Circuit Court.

Heard before Hon. E. J. GARRISON.

Action by Joseph S. Williams against the Louisville & Nashville R. R. Co., for damages for injuries suffered in a crossing accident. Judgment for plaintiff and defendant appeals. Reversed and remanded.

GOODWYN & MCINTYRE, GEO. W. JONES and J. MANLY FOSTER, for appellant. It was contributory negligence on the part of the plaintiff, under all the circumstances, to go on the track, without stopping, looking and listening.—*B. R. L. & P. Co. v. Oldham,* 141 Ala. 195; *L. & N. R. R. Co. v. Pearce,* 142 Ala. 680; *Burns v. L. & N. R. R. Co.,* 136 Ala. 526; *C. of G. R. R. v. Foshee,* 125 Ala. 213; *Robinette v. A. G. S. R. R. Co.,* 132 Ala. 501; *C. of G. Ry. v. Barnett,* 44 South. 392; *Wagner v. A. C. L. R. R. Co.,* 147 N. C. 315; (s. c. 61 N. E. 171, s. c. 19 L. R. A. N. S. 1028); *Gieskel v. So. Ry. Co.,* 81 S. C. 193 (s. c. 62 S. E. 65). If there was any negligence whatever on the part of defendant's servants, such negligence was not the proximate cause of the injury.—*N. C. & St. L. Ry. v. Harris,* 142 Ala. 249; *Bryant v. So. Ry. Co.,* 137 Ala. 488; *Western Ry. of Ala. v. Mutch,* 97 Ala. 194; *Mayer v. Thompson-Hutchison Bldg. Co.,* 116 Ala. 634; *Laidlaw v. Sage,* 158 N. Y. 73 (s. c. 52 N. E. 679; s. c. 44 L. R. A. 216); *Wagner v. A. C. L. R. Co.,* 147 N.

C. 315 (s. c. 61 S. E. 171; s. c. 19 L. R. A. N. S. 1028);
*Miner et al. v. McNamara et al.,* 81 Conn. 690 (s. c. 72
Atl. 138, s. c. 21 L. R. A. N. S. 477); *Lebanon L. & I.
Tel. Co. v. Lanham Lbr. Co.,* 115 S. W. 824 (s. c. 21 L.
R. A. N. S. 115); *Galveston H. & S. A. Ry. Co. v. Cham-
bers,* 73 Tex. 296 (s. c. 11 S. W. 279); *Berry v. Sugar
Notch,* 191 Pa. St. 345 (s. c. 43 Atl. 240); *Ring v. Co-
hoes,* 77 N. Y. 83 (s. c. 13 Hun. 76); *Murtaugh v. New
York C. & H. R. R. R. Co.,* 49 Hun. 456; 1 Thompson
on Negligence, Sec. 56; *Claypool v. Wigman,* 34 Ind.
App. 35 (s. c. 71 N. E. 509). The verdict is excessive
and the motion for a new trial should have been
granted.—*A. G. S. R. R. Co. v. Burgess,* 119 Ala. 555;
*So. Ry. Co. v. Crowder,* 130 Ala. 265; *C. of G. Ry. Co.
v. Morgan,* 49 South. 865; *Standard Oil Co. v. Tierny,*
96 Ky. 89; *Heddles v. Chicago Ry. Co.,* 74 Wis. 239;
*Chicago, etc., R. Co. v. Jackson,* 55 Ill. 497.

HILL, HILL & WHITING, for appellee. The defendant
was not guilty of contributory negligence for three rea-
sons: First, from the facts developed, plaintiff was not,
as a matter of law, required to stop, look and listen,
though he could have seen and heard.—2 Mayfield, 561;
3 Thompson on Negligence, Secs. 1756 and 2987. The
evidence fails to show as a matter of law, that plaintiff
could have seen or heard had he stopped, looked and
listened.—*Central of Ga. v. Hyatt,* 151 Ala. 361; *L. &
N. R. R. Co. v. Bryant,* 141 Ala. 292; *L. & N. R. R. Co.
v. Thornton,* 117 Ala. 282; *Cook v. Central of Ga. R. R.,*
67 Ala. 533. There was evidence introduced on the
trial in the shape of maps which do not appear in the
bill of exceptions, and hence it cannot be said that the
bill of exceptions contains all the evidence, with the
consequent presumption.—*Cobb v. State,* 115 Ala. 18;
*Wadsworth v. Wilson,* 101 Ala. 264; *Elliott v. Round*

*Mountain*, 108 Ala. 642. The acts of the defendant were negligent and were the proximate cause of the injury.—79 Fed. 257; 32 L. R. A. 530; 2 Thompson on Negligence, Secs. 1719, 1839, 1841, 1842, 1846; *L. & N. R. R. Co. v. Webb*, 97 Ala. 315; *Wes. Ry. Co. v. Mitchell*, 41 South. 430. It was negligence per se to kick the cars from the main line without any one on the front car to give warning of their approach, and to fail to have sufficient men on the car to stop them to avoid accidents.—*Birmingham So. v. Powell*, 136 Ala. 242; *L. & N. R. R. Co. v. Davis*, 91 Ala. 487; 33 Cyc. 953; 31 L. R. A. 855; 3 Am. Rep. 628; *Ala. Midland R. R. Co. v. McGill*, 121 Ala. 230; *A. G. S. R. R. Co. v. Arnold*, 80 Ala. 600. The verdict was not excessive.—*A. G. S. R. R. Co. v. Bailey*, 112 Ala. 167; *So. Ry. v. Crowder*, 130 Ala. 256; *Montgomery St. Ry. v. Knabe*, 48 South. 501; *R. & D. R. R. Co. v. Farmer*, 97 Ala. 141; *Birmingham v. Lewis*, 92 Ala. 352.

MAYFIELD, J.—The original complaint contained nine counts, and a tenth one was added by amendment; but all were voluntarily withdrawn by plaintiff, except the first, third, sixth, and ninth. The court gave the affirmative charge for the defendant as to the ninth count. The three remaining counts declared upon simple negligence, and to these the general issue and contributory negligence were pleaded. Hence no issues or questions as to wanton negligence, willful injury, or subsequent negligence are involved.

Plaintiff was an employee of the Marbury Lumber Company, the plant of which was located near the main line of the defendant's railroad, from which main line defendant had constructed a spur track about 400 yards in length, which extended through the yards or grounds of the lumber company, passing between its

sawmill and its planing mill (they being located in different buildings or sheds). This spur track was constructed for the use and convenience of the lumber company. The railroad company would, as needed, place empty cars on this spur track; and when loaded by the lumber company it would take them out for shipment on its line of roads. These loaded cars were removed and empty cars replaced once a day, or oftener, by the defendant railroad company. These cars were put in and taken out by means of the ordinary locomotives used for handling freight on defendant's main line.

Plaintiff had been employed by the lumber company and worked in and around its plant through which this spur track was operated; and was, of course, familiar with its location, use, etc., by the defendant and the lumber company. There were no walls between the planing mill and the spur track; there was a distance of about 3½ feet from the side of the planing mill to the first rail of the spur track. For about one year, on the side of the planing mill next to the spur track, there had been stacked a pile of lumber six or seven feet high. From the planing mill, there was a path leading across the spur track to the sawmill. On account of the pile of lumber referred to, one following the path that crossed the spur track from the planing mill to the sawmill could not see between this point and the main track, until he got very near the spur track. If the lumber had not been stacked there, there would have been an unobstructed view of the spur track towards the main line for a distance of 175 feet.

The plaintiff, Williams, was a feeder in the planing mill at machine No. 1, which was next to and about seven feet from the spur track. He had worked here for about three months prior to the time of the accident.

Occasionally lumber was thrown upon the spur track, and at times in great quantities. It was the duty of the feeders and graders employed in the planing mill to remove the lumber from the spur track. There were no special men employed for this purpose. At the direction of his foreman, plaintiff had at times assisted in doing this work.

The distance, from the point where plaintiff was employed to work in the planing mill to the main line of defendant was about 150 yards. The place of the accident was about 200 yards from the main line. When the sawmill and the planing mill were both in operation, cars moving along the spur track could not be heard. At the time of the accident, both mills were in operation.

On the day of the accident, the defendant used the spur track twice. There was no lumber on the spur track. On each occasion the same train crew were in charge of the cars of defendant. The first time the cars came into the spur track, they were attached to an engine. On the occasion of the accident, a cut of four empty cars was "kicked in" from the main line into the spur track. No engine was attached to these cars. There was no one on the front end of the first, second, or third car. There was one man on the top of the fourth car. The cars were "kicked" to go about 400 yards, and in opinion of plaintiff's witnesses were going at the rate of eight or ten miles an hour. No signal of the approach of the cars was given.

The plaintiff testified as follows:

"That his name was Joseph S. Williams; that he had instituted this suit against the defendant; that on or about October 22, 1907, he was an employee of the Marbury Lumber Company, which had a sawmill and plant in Autauga county; that it was engaged in the

sawmill business and operated a lumber plant at Marbury, Ala.; that the spur track ran into the plant of the Marbury Lumber Company and on its property; that the defendant operated its cars on this track; that plaintiff was struck by one of the cars of defendant operated by the defendant on this track; that he was employed at machine No. 1, about seven feet from the spur track; that there were five machines in a row running 'perpendicular' to the spur track; that witness was on the machine closest to the spur track; that the shed over the top of the planing mill extended about two feet; that his machine was about seven feet from the spur track; that there was a walk-way across the spur track at the end of his machine; that his duties were to feed that machine, to keep sawdust from under it, and to keep the spur track clean, and to keep the lumber off of it; that he was ordered to do this by the foreman; that Mr. Jenkinson hired him and put him under Mr. Dormen, the planing mill foreman; that while in the discharge of such duties he received some injuries for which he brought this suit; that he worked for them about three months; that he had worked for them about three years before; that he was injured on the crossway over the spur track; that the crossway was level with the planing mill; that the track at the crossway was much frequented at that time, and before then for several years, and many people passed there; that the track was used then to put lumber on, going from the yard to the planing mill.

"Whereupon plaintiff's attorney asked plaintiff the following question, 'How often were the people on there then, and before then—the employees of the Marbury Lumber Company? To the asking of this question, the defendant objected, which objection was overruled by the court, and to the action of the court in

overruling said objection the defendant then and there duly and legally reserved an exception. Plaintiff then answered that the people crossed there at all times, and the trucks with the lumber stacked on; they had to carry them out that way. Witness, in response to another question, swore that he expected that people passed there going to the sawmill and machine shop every minute in the day.

"Witness further testified that it had been the case ever since he had been there about three years; that there was an obstruction to the view of the spur track; that it consisted of some old lumber; that he did not know the distance from the lumber to the box cars when a box car was on the spur track; that he never did measure it; that there was just room enough for a box car to go through on both sides; that this obstructed his view of the spur track down towards the main line, and that the car that injured him came from the direction of the main line; that in order to see down towards the main line one would have to step out on the track; that there was just room there for a box car to pass the lumber; that this lumber had been there ever since witness had been there; that there was no noise made by the train at the time and before the time witness was injured; that the sawmill and planing mill were in operation, making noise within a few feet of him; that he could not hear a car coming; that you could not see a car coming until you got upon the track, unless you stopped and looked around, and stuck your head out; that if he stuck his head out that his head would be in the way of the car that came by; that just as he went there a car struck him; that he was injured between 1 and 2 o'clock in the daytime; that both mills were in full blast and operation; that just before he went out on the track he had been working at his machine; that

his lumber gave out; that he asked John Norrell if there was any more for him, and that John said, 'No,' and that witness said to John that there was some out there; that Norrell got up, and that witness grabbed him by the side, and that Norrell grabbed witness by the leg; that witness put his hands around Norrell's shoulder, and that Norrell put his arms around him, and that they went to the place; that the walk-way was about three feet wide; that on one side was old lumber and on the other was new lumber; that there was some lumber out on the side tracks at the time he went out; that Norrell and he had played in the plant before they had started out; that they had quit playing when they started across the track, but that Norrell had his arm around him, and that he had his arm around Norrell when they started out across the track.

"Whereupon plaintiff's attorney asked witness the following question, 'Where were you going?' To the asking of this question, defendant objected, which objection was overruled by the court, and to the action of the court in overruling said objection defendant then and there duly and legally reserved an exception. Plaintiff answered that he was going across the track after some five quarter stuff stacked up there; that he wanted to catch up with that.

"Witness further testified that it was directly across the track by the side of the dump track; that it was his duty to get that stuff; that he was to put it on the No. 1 chain to feed the machine; that it was yard stuff brought in from off the yard; that this was his duty, and Norrell's duty also; that he could not hear any train when he started out; that he did not hear any train or cars coming; that just as he and Norrell stepped out on the track the car hit them; that it hit them just as they got on the track; that it was just as

they stepped on the track; that witness was on the right
side and John Norrell on the left; that the car knocked
him over John; that John lost his life; that plaintiff
received injuries. Plaintiff was then asked by his at-
torney this question: 'Did you receive any injury?
What were they? Show us.'—to which he answered
that he lost his left leg and one-half of his right foot.
The defendant objected to the proffer of the injuries.
The court overruled the objection, and the defendant
then and there duly excepted. The court then in-
structed the jury that the testimony was admitted
merely to show the location and extent of the injury.

"At this point plaintiff's attorney requested witness
to remove the shoe on his right foot. Thereupon plain-
tiff removed the shoe from his right foot and his sock,
which showed that all of his toes had been cut off, ex-
cept the little toe; that a part of his foot was cut off
with the toes; that the part of his foot that was cut off
commenced where the little toe joined the foot, and ex-
tended backwards diagonally across the instep. Plain-
tiff testified that the balance of his toes were gone and
also part of his foot; that the other limb was artificial;
that he could get it off by pulling his pants down; that
his leg was off halfway between the kneejoint and the
ankle; that at the time he was injured he was earning
$1.50 per day, and was at that time 24 years of age and
in good health; that he was, up to the time of his in-
jury, in the planing mill business; that he had been in
the planing mill business all his life; that since the in-
jury he had not been able to do any work, but that he
was guarding the convicts, sitting down at Henderson's
Lumber Company; that the injury to the left leg pained
him all the time; that he had a specially constructed
shoe for the right foot; that the stump of his left leg
fitted into a jacket in the artificial limb; that the spur

track came into the plant around a sharp curve; that this curve was about 50 feet down the track from where plaintiff was injured; that the skidways were about 60 feet down the track; that he could not see beyond the curve from where he was injured.

"On cross-examination, witness testified that his estimate of 60 feet down the track was just a guess; that just as he and Norrell walked down to the track and got on the track the car hit them; that he didn't look down the track; that the lumber was in the way, and that he couldn't see; that as he got by the lumber he looked, but the car struck him; that he was on the side of the track when the car struck him; that he was on the cross-ties, to the best of his memory; that he was right by the rail; that he was on the outside of the rail when the car struck him and knocked him over John Norrell; that at the time he and Norrell had their arms around each other; that Norrell fell into the center of the track; that he was under a car after he was hit; that he was knocked into the middle of the track; that just as he got on the track the car hit him. Plaintiff demonstrated to the jury how he was injured and his position as he came upon the track, and said that he walked by the lumber and looked and made one step, and the car struck him; that he would not say positively whether or not his foot had gone down into the track inside of the rail; that witness and Norrell stepped over the track together, at the same time; that he would not say that he had stepped over the rail; that he knew that he had stepped on the cross-ties, fixing to step over; that he did not remember whether he had stepped over any rails, or not, when the car hit him; that as soon as he got there he was hit; that the lumber by the side of the track was stacked up, so a box car could pass by; that a lot of times a car would knock the lumber down; that

it was rotten lumber, and had been there ever since witness had been there; that it had no posts to hold it, that it was just stacked up; that there was an entrance into the sawmill across the track from the planing mill; that there was a boarded up way next to the spur track about four feet high; that you had to climb over this to get on the tramway track; that the lumber he went for was on the spur track next to the bank, between the rails and the raised dump track; that the rails of the spur track were about 2 or 2½ feet from the raised tramway track; that there were about 15 pieces of lumber 1¼ inches thick and 6 inches wide piled up there; that he had caught up with his lumber; that he stepped over and asked Norrell if there was any more for him, and that Norrell said, 'No;' that witness grabbed him by the side, and that Norrell grabbed him by the leg, and that witness said, 'Come over and get the lumber;' that they were not there over a minute; that they tussled, with their arms around each other; that they were laughing and talking and stepped out on the track; that they walked straight out without stopping; that they went on the track, and the car hit them; that he could not say whether any one was on the car or not; that all he knew was that the car struck him right on the track.

"Plaintiff here rested."

One Willis Hall, a witness for plaintiff, as to the accident, testified, among other things, as follows:

"That in October, 1907, at the time plaintiff was injured, the witness was employed by the Marbury Lumber Company, in Autauga county; that he saw the injury to Mr. Williams; that he saw the cars just about the time they struck him; that he saw no engine attached to the cars; that he could not see from where he stood whether there was any one on the front car or not; that John Norrell was struck at the same time as

plaintiff; that just before they were struck, and about the time they were struck, they had their hands around one another and ran out on the track, and at that time the car struck them; that he had seen them before they were struck; that they had their hands locked around one another inside the mill; that they had been on the track no time when they were struck; that they were dragged down the track about 1½ or 2 car lengths; that he had no interest in the case; that there was some lumber piled up on the side of the planing mill, between where Williams came out of the planing mill and the main line.

"On cross-examination witness testified that a person could look down the spur track without stepping on the track; that one did not have to go on the track to see down the track; that he saw the whole occurrence; that he went out there after the cars stopped; that Norrell was on the other side of the track; that Williams was pulled out by a man on the side of the track next to the planing mill, and it was about 1½ or 2 car lengths; that he was about the end of the cars; that they were standing up at the time they were struck; that just as they got on the track the cars hit them; that he did not know which of the two started to scuffling; that he did not see the top of the cars from where he stood; that he did not have any idea how many cars there were in the cut."

Andrew Burton, another witness who saw the accident, testified as follows: "That on October 22, 1907, at the time plaintiff was injured, he was engineer and oiler in the employment of the Marbury Lumber Company; that he saw Williams when he was hurt; that he was standing on a pile of lumber about six feet high, about twelve feet from the track; that he saw the train, and saw that they were about to be hit, and he halloed;

that they had hold of one another when he saw them; that they were standing up when the train hit them and knocked them down; that they had just gotten on the track; that he could not see or hear the engine where he stood; that he did not see a man on the front car; that he saw a man catch the train and climb up and went (go) to putting on brakes about the time the plaintiff was hit; that he thought there were four cars in the cut; that he knew the train crew by sight; that they had been operating there before; that they had been there often, but did not run in there regularly; that they had been there before that day, when the mill was in full operation; that they had gone to Mountain Creek for about 20 minutes; that the planing mill and sawmill were both in operation at the time; that they made right smart of noise—you could hardly hear anything; that the sawmill was right across the track; that the sawmill burned down after the injury; that it was almost impossible to hear the approach of a train with the shot-gun steaming; that at the time of the injury there was a pile of lumber next to the spur track, between the place where plaintiff was hurt and the main line; that on account of this it was mighty near impossible to see a train from there; that on the other side of the track there was a pile of new lumber, put there that morning; that the passageway was a narrow space, about 3 or 3½ feet; that there was a passageway, where they went backwards and forwards all the time; that they had used it ever since it had been a planing mill.

"Plaintiff thereupon asked witness the following question: 'How often had people at that time and before that time—that is, the employees—crossed there?' To the asking of this question defendant objected, which objection was overruled by the court, and to the action of the court in overruling said objection the de-

fendant then and there duly and legally reserved an exception. Witness answered that from the sawmill down to the shed there are people passing there every minute in the day on the track.

"Witness further testified that when you pass along the passageway between these two piles of lumber you were right on the railroad track; that it was at this place where plaintiff was injured; that there were boards at times on the spur track and on each side thereof; that some time they had regular men there to move these boards; that he could not tell whether they had a regular man at the time of the injury or not; that they were always done by the planing mill crew; that Williams was a planing mill man; that the whole plant was operated by the Marbury Lumber Company, and the spur track by the Louisville & Nashville Railroad; that he meant by 'operated' that trains (were) run over it and switched in there every day by the defendant; that they come in there every day, and sometimes twice a day, and sometimes as often as three times a day; that it was only used in serving the Marbury Lumber Company; that no other freight was handled there while he was working there; that he had been there a little over three years; that the track ended at the barn or shed of the Marbury Lumber Company; that it was all on the premises of the Marbury Lumber Company; that it was the Louisville & Nashville Railroad's rails, and that the Louisville & Nashville Railroad's men kept up the track.

"On cross-examination witness testified, that Williams and Norrell had hold of one another as the train hit them; that the train hit them just as he looked out there; that he saw the train hit them, and that they went down on the track and out of sight; that the distance of the rails of the spur track to the planing mill

was not very far; that the length of that part of the ties
outside of the rails was about 18 inches, and the lumber
was piled right up against the ends of the ties; that a
man would have 1½ feet, at least, clear space to look
down the track, if he would take the time to look; that
a man could stop and look down the track and see a car
coming; that there was some lumber on the track that
day; that it was to the side of the track, on the planing
mill side, and on the opposite side, next to the sawmill;
that about one-half of the employees of the mill went
across the spur track at the point where the boys were
hit; that witness had used it many times; that all that
worked in the pit used it; that what he meant by the
'pit' was where the plaintiff was hurt; that all of the
millmen that fed the machines used that passageway;
that there were about 10 or 12 that went out there all
the time, going from one mill to another, out on the
track, or down in the yards; that they went across
there all the time; that the steps into the mill on the
other side face straight across from you; that he could
see the top of the car from where he stood, as he was
up high; that he did not see any one on the car, until
he saw the brakeman catch it; that he was not catching
it at the time of the injury; that he did not see the en-
gine at all; that at the time of the injury he saw the
brakeman catch the car at the engine room of witness;
that he ran from the main line and caught the train;
that he was standing at the east end of the engine room
on the pile of lumber; that he did not see the brakeman
when he started from the main line; that the main line
was the only place that he could be coming from; that
he ran by engine room towards witness; that he might
have come from the switch; that he went on the top of
the cars and put on the brakes; that he put on the
brakes after the boys were down; that witness was be-

tween the engine room and planer; that he was on the same side that the boys were on, above them; that the boys were hit at the pit; that they were about 40 yards from the back of the engine room; that after he saw them struck he whirled around and saw the brakeman catch the cars; that the cars were probably going 8 or 10 miles an hour; that from where he saw the brakeman catch on the cars to where the boys were hit was about 42 yards; that he saw that after the boys were hit.

"On redirect examination witness further testified that he had been subpoenaed by both plaintiff and defendant, and that he thought Mr. Hall had also been subpoenaed for both; that at the time of the injury there was lumber on both sides of the track; that somebody else might have put a brake up on another car before the collision; that he thought the man he saw get on the cars was the second man that got on the train; that when the cars stopped he knew there were two men on the cars; that he had stated that the brakes were not applied until after the collision; that there was one man on the second car and one on the third car; that the man he saw get up was on the third car, but there was a man ahead of him, putting on brakes; that he was not certain of that, but that he thought there was a man ahead of him on the train."

This was substantially all of the plaintiff's evidence as to the manner in which the injury occurred. It is certain that it is upon this evidence that plaintiff did and must rely for his right of recovery. It is certain that this evidence tended to show negligence on the part of defendant's agents or servants, such as to render the defendant liable in damages for plaintiff's injuries so suffered, but for the plaintiff's own negligence, which concurred with that of the defendant, and thereby proximately contributed to his own hurt. We think

there can be no doubt that this evidence conclusively shows that plaintiff was guilty of negligence and that such negligence proximately contributed to his injury; that is, but for his own negligence, the injury would not have happened.

It is true, as has often been decided by this court, that contributory negligence is purely defensive matter, and that it must be specially pleaded to be availing, and that the burden of proof as to such defense is upon the defendant. But it is equally certain that the plaintiff may relieve the defendant of this burden, if his own evidence affirmatively and conclusively shows his own negligence, and that it proximately contributed to the injury of which he complains.

The overwhelming weight and number of authorities declare the rule to be that a person attempting to cross a railroad track upon which trains of cars and steam locomotives are liable to be moving must stop, look, and listen, before going upon the track. It is his duty to look in both directions. It is as much a breach of duty for a traveler to fail to take the proper precautions in this respect, as it is for the railroad's employees to fail to give the statutory signals; the only difference being that the one is prescribed by the common law and the other by statute.

The fact that one train has passed is not sufficient excuse for failure to look out for all trains, cars, or locomotives properly upon the track, whether they be regularly scheduled or not. Nothing else appearing, he must act upon the presumption that one may pass at any time. Of course, the degree of care to be exercised is proportionate to the frequency of the passage of such dangerous agencies, just as is the degree of care required of those operating such dangerous agencies through or over parts of the track which are known to

be much and continuously used by travelers. The traveler or person using the track of a railroad must always exercise ordinary care for his own safety, and not depend entirely upon the care of others therefor.

What is, or is not, ordinary care often depends upon the facts of the particular case. The rule, "stop, look, and listen," is not arbitrary or invariable as to time and place. It may depend in some measure upon the familiarity of the one passing, with the place of crossing; and he cannot always be said to be guilty of contributory negligence, because he failed to stop, look, or listen at one particular time or place, rather than at another. The common law is not as definite and certain in this respect as some of the statutes touching signals of danger.

As has been said by the Indiana court, which is quoted by Mr. Elliott (E. on Railroads, vol. 3, § 1166a) : "The law does not say how near the track the traveler shall make his observations. There is no arbitrary rule in this respect. What the law requires is that the traveler shall choose, in the vicinity of the crossing, according to environments, a place reasonably calculated to afford full opportunity for seeing and hearing"—and the author adds that he should continue to look and listen, and to vigilantly exercise his faculties, until he has passed the crossing.

The same author adds, in section 1167 of his work on Railroads, the following: "Ordinary care often requires that the traveler should stop, look, and listen for moving trains from a place where danger can be discerned and precaution taken to avert it. If, for instance, the noise is so great that an approaching train cannot be heard, and the obstructions are such that it cannot be seen, then the traveler must come to a halt and look and listen. It cannot be said that one who

simply looks and listens where he knows, or should know, such acts are fruitless and unavailing, exercises that degree of care which the law requires. While it cannot be justly affirmed, as we believe, as matter of law, that there is a duty to stop in all cases, yet there are cases where the failure to stop must be deemed such a breach of duty as will defeat a recovery by the plaintiff. There are very many cases holding that the surroundings may be such as to impose upon the traveler the duty of stopping, looking, and listening, and these cases, as we think, assert the true doctrine. Some of the courts, in well-reasoned cases, press the rule further, and hold that the traveler must, in all cases, stop, look, and listen. As we have said, we do not think that it can justly be affirmed, as matter of law, that there is a duty to stop in all cases, but we do think that the duty exists in cases where there is an obstruction to sight or hearing, and that where the surroundings are such that but one conclusion can be reasonably drawn—and that conclusion is that it is negligence to proceed without halting—the court should without hesitation direct a verdict, if no halt is made. In the majority of cases, however, the question is one of fact, or a mixed question of law and fact, rather than a pure question of law."

The following authorities have announced the following propositions of law; and when applied to the facts and issues in this case we think they are conclusive to the effect that plaintiff, as matter of law, was guilty of such contributory negligence as to bar his recovery:

"The rule of law that a railroad track is in itself a warning of danger, imposing on persons about to cross it the duty to look and listen for approaching trains, applies as well to a side track as to a main line."—*Mynning v. Detroit, L. & N. R. Co.*, 59 Mich. 257 (26 N. W. 514).

"A person traveling over a railroad track at a private crossing, where the view is obstructed, must use all his faculties to ascertain whether or not he can cross in safety."—*Thomas v. Delaware, L. & W. R. Co.* (C. C.) 8 Fed. 729, 19 Blatchf. 533.

"Where a crossing is particularly dangerous, and requires extraordinary effort to ascertain whether it is safe to attempt to cross, one familiar with the locality and the danger surrounding it must use care proportioned to the probable danger."—*Cincinnati, H. & I. R. Co. v. Butler,* 103 Ind. 31 (2 N. E. 138).

"Plaintiff could have seen an approaching train at any time, except in a space of about seven rods, a short distance from the track, and the track was elevated, so that a team could be stopped at any moment before crossing. The evidence as to giving the signals was conflicting. Held, that plaintiff was negligent."—*Indiana, B. & W. Ry. Co. v. Hammock,* 113 Ind. 1 (14 N. E. 737).

"It is proper to instruct the jury that if there were any obstructions to sight or hearing in the direction of the approaching train, as the plaintiff neared the crossing, the obstructions required increased care on his part on approaching the crossing. The care must be in proportion to the increase of the danger that may come from the use of the highway at such a place."—*Cincinnati, I., St. L. & C. Ry. Co. v. Howard,* 124 Ind. 280, 24 N. E. 892, 8 L. R. A. 593, 19 Am. St. Rep. 96.

"If a railroad crossing is particularly dangerous, and requires extraordinary effort to ascertain whether it is safe to attempt to pass over it, one familiar with the locality and danger must use care proportioned to the probable danger."—*Louisville, N. A. & C. Ry. Co. v. Stommel,* 126 Ind. 35 (25 N. E. 863).

"If the view of the track is limited and partially obstructed, greater care is required of a traveler than if

he had an open and extended view."—*Atchison, T. & S. F. R. Co. v. Townsend,* 39 Kan. 115 (17 Pac. 804).

"The fact that the approach of a railroad to a highway crossing is obscured by embankments, or otherwise, imposes upon travelers by the highway, as well as upon the railroad company, special care to avoid collisions."—*Haas v. Grand Rapids & I. R. Co.,* 47 Mich. 401 (11 N. W. 216).

"A team collided with a railway train at a road crossing, and plaintiff's intestate was killed. The railroad and the highway were both below the general surface of the ground, and an approaching train could only be seen occasionally by one driving towards the crossing. Decedent was familiar with the crossing, but, except that he checked his team for a moment some four rods from it, he did not appear to have observed any precaution. The engine whistle was duly sounded when the crossing was approached. *Held,* that decedent was chargeable with contributory negligence, and that judgment for the company should not be disturbed."—*Haas v. Grand Rapids & I. R. Co.,* 47 Mich. 401 (11 N. W. 216).

"There was evidence that the railroad crossed the highway obliquely; that there was a cemetery between the highway and the railroad on which young, bushy oak trees were growing, but some of their leaves had fallen, and the train could easily be seen through them; that deceased was sitting with his back to and his face turned away from the train, approaching with little noise and great speed; that deceased did not look up or change his position, until his horse's feet struck the iron rail; that deceased was acquainted with the situation of the crossing. The evidence was conflicting as to whether any signals were given. Held, that deceased

was guilty of contributory negligence."—*Matta v. Chicago & W. M. Ry. Co.,* 69 Mich. 109 (37 N. W. 54).

"In an action against a railroad company to recover for injuries received at a city street crossing, it is error to refuse to charge that when the view on approaching a crossing is obstructed, and the noise prevents one from hearing readily, then there is imposed on plaintiff a greater degree of care than is required when approaching a crossing where there are no such obstacles to sight or hearing, since due care by plaintiff is determined by the circumstances."—*Louisville, N. O. & T. Ry. Co. v. French,* 69 Miss. 121 (12 South. 338).

"Where it appears, in an action against a railroad company for wrongfully causing the death of A., that the deceased was not a stranger to the place, but was at work drawing and piling wood at that place, and had been so engaged the whole of the last season, and that 24 trains of cars passed there daily, which must have been known to deceased, it was the height of imprudence and heedlessness for him to approach and attempt to cross the track about the time a train was due, till he had fully ascertained that it was entirely safe to do so; and the fact of the location of a wood pile, perfectly well known to him, which obstructed the view of the train, does not diminish in the slightest degree, but rather increases, his duty to be careful. In such a case the deceased was bound to exercise care, diligence, and foresight in proportion to the danger to be avoided and the fatal consequences involved in his neglect."—*Mackey v. New York Cent. R. Co.,* 27 Barb. (N. Y.) 528.

"If the case is such as to require the person wishing to cross a railroad to come near the track to make his observation, that circumstance, so far from excusing him from the duty of looking at all to see whether a

[Louisville & Nashville R. R. Co. v. Williams.]

train is approaching, would only render that duty more imperative."—*Wilds v. Hudson River R. Co.*, 29 N. Y. 315.

"Where plaintiff was driving on a road which crossed a railroad track at a place where a train could not be seen until he arrived within 26 feet of the track, and failed to look for a train when he came to that place, and was struck by the train, he was guilty of contributory negligence, and cannot recover."—*Bomboy v. New York Cent. & H. R. R. Co.*, 47 Hun. (N. Y.) 425.

"A person who drives onto a railroad crossing where the view and hearing is obstructed, without looking or listening, cannot recover for injuries caused by collision with an approaching train."—*Gulf, C. & S. F. Ry. Co. v. Dodson*, 3 Willson, Civ. Cas. Ct. App. § 394.

"Plaintiff, in approaching defendant's tracks, stopped for some minutes at a point where his view of the track on the east side of the street was cut off by a building which extended to within 30 feet of the tracks. He knew the crossing thoroughly, and was aware that defendant's construction train was constantly crossing, but he did not look at the track on the east side after passing the building, and was struck by the construction train coming from that direction. Held, that he was guilty of contributory negligence."—*Nelson v. Duluth, S. S. & A. Ry. Co.*, 88 Wis. 392 (60 N. W. 703).

"Where one attempts to drive his team over a railroad crossing on a level with the highway, with knowledge of its dangerous condition; that a warehouse formed an obstruction to the sight and sound of a train coming from one direction; that it was the time for making up a train, and that the locomotive must pass the crossing to do so—he must both look and listen for the approach of the locomotive, and, if need be, stop for

that purpose."—*Tucker v. Duncan* (C. C.) 9 Fed. 867, 4 Woods, 652.

"One who drives across a railroad track without stopping to listen for a train, and is injured thereby, cannot recover for the injury, though the view of the track was obstructed by trees, and though he checked his horse's speed and listened for a train, since, if he had stopped his horse altogether, he might have heard the train."— *Littauer v. Narragansett Pier R. Co.* (C. C.) 61 Fed. 591.

"Where the view of the track from the highway is obstructed, or the crossing is in other respects especially dangerous, it is the duty of a traveler, aware of such facts, to exercise a higher degree of care than when the view is unobstructed; and if he cannot otherwise satisfy himself that it is prudent to cross he must stop and listen, before driving on the track."—*Chicago, R. I. & P. R. Co. v. Crisman,* 19 Colo. 30 (34 Pac. 286).

"In an action for injuries received at a crossing, where it appeared that the crossing was so obstructed that plaintiff could not see an approaching train until within a few feet of the track, it was error to instruct that a traveler is not bound to stop when he approaches a railroad crossing."—*Chicago, R. I. & P. Ry. Co. v. Williams,* 56 Kan. 333 (43 Pac. 246).

"It is negligence per se for a traveler to cross a railroad track without first looking and listening for a coming train. If his view is obstructed, he must listen the more attentively; and if he is riding with bells attached to his sleigh, and does not stop his horse in order to listen, he is guilty of such contributory negligence that no action can be maintained against the railroad company for any injuries sustained."—*Chase v. Maine Cent. R. Co.,* 78 Me. 346 (5 Atl. 771).

"Plaintiff drove a team attached to a lumber wagon towards a railroad crossing, with his back to an approaching train. Intervening objects obscured a view of the track, so that he could not see the train until within a few feet of the crossing, and then only when it was a short distance from the crossing. A mill in the vicinity made considerable noise, and the wind was blowing in a direction to take the sound of a whistle from plaintiff. On reaching the crossing, the team hesitated, but plaintiff urged them across, and was struck by the train. He was thoroughly familiar with the crossing, and knew that the train was due. Held, that it was not sufficient that plaintiff looked and listened for the train as he drove along, but he should have stopped his wagon and listened."—*Brady v. Toledo, Ann Arbor & N. M. R. Co.*, 81 Mich. 616 (45 N. W. 1110).

"One whose view of a railroad track is obstructed as he approached it is guilty of contributory negligence, if he attempts to cross it without stopping to listen for a train which he knows is due."—*Houghton v. Chicago & G. T. Ry. Co.*, 99 Mich. 308 (58 N. W. 314).

"Though the view of a person approaching a railroad crossing on a public road is obstructed until he is within six feet of the track, he should stop then and look for approaching trains, or he will be held guilty of contributory negligence that will preclude his recovery for injuries sustained on being struck by a train."— *Clark v. Northern Pac. R. Co.*, 47 Minn. 380 (50 N. W. 365).

"A person drove a wagon loaded with boxes of empty bottles across a railroad track at a point where it was impossible to perceive an approaching train until within six or eight feet of the track. Held that, as the

rattling of the bottles prevented his hearing the noise of the trains, it was contributory negligence not to stop and listen."—*Merkle v. New York L. E. & W. R. Co.,* 49 N. J. Law, 473 (9 Atl. 680).

"A person approaching the track of a steam railroad is bound to look for approaching trains, and must use his sense of sight at the last moment of opportunity, before passing the line between safety and peril, and mere diversion of attention is not a sufficient excuse for failure so to do. · He is not at liberty to calculate how long it will take an approaching train to reach the crossing, if running at a lawful and usual rate of speed. He must anticipate that it may be running at an excessive speed, and may reach the crossing before he can safely pass it."—*Grimm v. Milwaukee E. R. & L. Co.,* 138 Wis. 50, 119 N. W. 835.

It conclusively appears that the plaintiff was conscious of his surroundings, the location of the track, its use, his proximity to it, the obstacles which prevented his seeing the train, and of the great noise of the mill, capable of drowning the sound of approaching cars; and under these conditions he deliberately and oblivious of all danger walked upon the track, his arms around his companion, in front of the moving cars.

We judicially know that plaintiff could and would have seen the cars in time to avoid the injury, if he had stopped and looked, or had done either, after getting on a line with the pile of lumber which obstructed his view theretofore. Had it been a brick wall a hundred feet long and a hundred feet high, instead of the pile of lumber, he could and would have seen the train, on reaching the point in line with the wall, if he had stopped and looked. He could not get upon the track or be stricken by the cars until he had passed the point

at which he could and must have seen the cars, if he had looked.

As is argued by plaintiff, the obstruction, of course, made it useless for him to look from the point at which he started across the track; but this made it all the more his duty to stop and to look, one or both, at the point at which he could first see the approaching cars. Had he even stopped here (without looking), he would not have been injured; that is, unless he had walked against the side of the moving cars, which, of course, would have been negligence. He does say, on one occasion, that he looked before stepping onto the track; but if he had looked, at the only time or place, he must have seen the cars; he could not have avoided seeing them. It was, of course, useless to look before reaching this point, or after passing it, all of which he well knew.

Plaintiff and the cars evidently reached the place of collision about the same time. The greatest rate of speed ascribed to the cars was 10 miles an hour. All the evidence shows conclusively that plaintiff was guilty of the grossest kind of negligence and recklessness, by walking onto the railroad track in front of the moving cars, without using any care whatever. The slightest degree of care on his part would have rendered the injury impossible, so far as the proof shows.

It is insisted by appellee that the omission of the map from the bill of exceptions, which it recites was introduced in evidence, makes the bill of exceptions so incomplete that we cannot consider it as containing all the evidence. We have been furnished with maps by both parties on this appeal, of the locus in quo, and it is fully described in the bill of exceptions, and it is therefore made as certain as the map could have made it. And we have considered the case in its aspects most

favorable to, and most strongly tending to support, the rulings of the trial court.

Reversed and remanded.

SIMPSON, ANDERSON, SAYRE, and SOMERVILLE, JJ., concur.